HARRY V. HARRIS & another *vs.* DELCO PRODUCTS, INC.

Bristol.   December 7, 1939. — February 28, 1940.

Present: FIELD, C.J., DONAHUE, LUMMUS, COX, & RONAN, JJ.

*Contract*, Validity.   *Fraud.*

The facts, that a well digger, to induce a landowner, seeking a well of
sweet water in land as near as one hundred yards on one side and two
hundred yards on another to salt tide water, to make a contract with
him for the digging of the well, represented to him that "there would
be definitely no chance of striking salt water," and that salt water was
struck and further digging was abandoned, were no defence to an action
of contract for the services in digging: the defendant in the circum-
stances must have known that the representation was of a fact not then
susceptible of actual knowledge.

CONTRACT.   Writ in the Second District Court of Bristol
dated September 27, 1938.

On removal to the Superior Court, the action was tried
before *Walsh*, J., who ordered a verdict for the plaintiffs in
the sum of $257.50.

*I. H. Simon*, (*J. Lifrak* with him,) for the defendant.

*G. B. Searls*, (*G. H. Brown* with him,) for the plaintiffs.

COX, J.   The parties executed a written agreement under
seal on August 10, 1938, by the terms of which the plain-
tiffs agreed to sink a well on the defendant's premises at
some point to be mutually agreed upon, and the defendant
agreed to pay for the work at the rate of $4 per foot, and
"also to furnish and water."   The only other provisions of
the contract were that the well should be started with a drive
pipe of a certain diameter; that it should be driven from the
ground surface to ledge or bed rock and then should be con-
tinued into the rock until water was found, to a depth dic-
tated by the defendant, limited, however, to a total depth
of five hundred feet; that if it was necessary to reduce the
size of the hole or to recase it, the plaintiffs should do this
without extra cost to the defendant; and that a five-hour
pumping test would be made at the expense of the plaintiffs.

The first count of the declaration is the only one that is material and it is based upon this contract.

Ledge was encountered at a depth of about seventy-eight feet, and the total depth drilled was two hundred twenty-five feet, at which point, apparently, salt water was struck.* There was uncontradicted evidence that no one can tell before starting to drill a well that is located near salt water whether salt water will be encountered. The defendant is engaged in the soft drink business and there is salt tide water on two sides of its plant — at a distance of about one hundred yards on the north, and about two hundred yards on the west. Its president and treasurer, one Lynch, who signed the contract in its behalf, testified that he told Harry V. Harris, one of the plaintiffs, the purpose for which the well was wanted; that, before the agreement was signed, Harris said that "we would get good, sweet water. He said he knew what the conditions were there because he had been drilling holes there for the Firestone and that he had gone down to the ledge and he knew exactly how deep the ledge was." There was evidence that Lynch relied upon this "representation"; that prior to this conversation, it had come to his attention "about some trouble with salt water in the neighborhood" and that he told Harris about that "At the time of the signing of the contract — or the week before the contract was signed." Lynch's secretary testified that she was present on August 10, the date the agreement was signed, and that in the conversation between Harris and Lynch she heard Harris say, "There would be definitely no chance of striking salt water." It could have been found that the defendant's premises are just across the street from the Firestone plant where the plaintiffs had made some borings for foundation tests.

After the charge, the trial judge submitted the following question to the jury: "Did Mr. Harry V. Harris make the representations to Mr. Lynch as testified to by Mr. Lynch and his secretary?" The jury's answer to this question was:

---

* There was uncontradicted evidence that, when it was discovered that the water was salty, further digging was abandoned on advice of the plaintiff Harris. — REPORTER.

"yes," whereupon the judge directed a verdict for the plaintiffs on the first count of the declaration, subject to the defendant's exceptions. The case is here upon the report of the trial judge, with the stipulation that if the representations that the jury found were made should have been submitted to the jury for determination as a defence to this action, then judgment is to be entered for the defendant; otherwise, judgment is to be entered on the verdict.

The issue upon which the case was tried was that of fraud; no other issue has been argued, and no other question is considered. The defendant does not attempt to vary by parol evidence the sealed instrument that it signed. Actionable fraudulent misrepresentations are not so merged in a written instrument procured by their means that they may not be made the basis of a suit to set aside or rescind the written instrument, *Weeks* v. *Currier*, 172 Mass. 53, 55; *Bates* v. *Cashman*, 230 Mass. 167, 168, or the basis of a defence to an action brought on the instrument.* *Pike* v. *Fay*, 101 Mass. 134, 137. *Twohig* v. *Daly*, 248 Mass. 49, 51. See *Howard* v. *Barnstable County National Bank of Hyannis*, 291 Mass. 131, 135–136.

The test to be applied in the case at bar to determine whether the defendant is to be relieved of its contract by reason of any alleged fraudulent misrepresentations is the same as that applied in actions of tort for deceit. In *Chatham Furnace Co.* v. *Moffatt*, 147 Mass. 403, it was said at page 404: "It is well settled in this Commonwealth that the charge of fraudulent intent, in an action for deceit, may be maintained by proof of a statement made, as of the party's own knowledge, which is false, provided the thing stated is not merely a matter of opinion, estimate, or judgment, but is susceptible of actual knowledge; and in such case it is not necessary to make any further proof of an actual intent to deceive. The fraud consists in stating that the party knows the thing to exist, when he does not know it to exist; and if he does not know it to exist, he

---

* The defendant's answer contained the following: ". . . the defendant says that if it did sign the contract contained in the plaintiffs' declaration, it was induced by the fraud and false representations made to it by the plaintiffs." — REPORTER.

must ordinarily be deemed to know that he does not" (see cases cited). *Page* v. *Bent*, 2 Met. 371, 374. *Cole* v. *Cassidy*, 138 Mass. 437. *Alpine* v. *Friend Bros. Inc.* 244 Mass. 164, 167, and cases cited. "If a statement of a fact which is susceptible of actual knowledge is made as of one's own knowledge, and is false, it may be made a foundation of an action for deceit without further proof of an actual intent to deceive." *Weeks* v. *Currier*, 172 Mass. 53, 55. Representations, although false, concerning matters not susceptible of actual knowledge have been held to be nonactionable, at least when made by one not in a fiduciary capacity, *Lynch* v. *Murphy*, 171 Mass. 307, and it is a general rule that the law refuses to permit recovery in tort for damages resulting from reliance upon false statements of belief, of conditions to exist in the future, or of matters promissory in nature. *Loughery* v. *Central Trust Co.* 258 Mass. 172, 175. *Coe* v. *Ware*, 271 Mass. 570, 573.

Applying these general principles to the facts in the case at bar, we are of opinion that there was no error. Representations that were made related to a matter not then susceptible of actual knowledge. Even if we assume that the purpose to be accomplished by the plaintiffs was to provide a well of fresh water for the defendant, at the time of the alleged conversation the defendant's representative must have known that no one could tell whether fresh or salt water would be encountered without doing the very work that was the subject matter of the contract between the parties or work of that same nature. The representations must be held to have been, at most, expressions of an opinion concerning the ground conditions, and the defendant's representative must have so understood them and must have known that Harris was doing nothing more than expressing his belief, or what purported to be his belief, concerning those conditions. See *Ernest F. Carlson Co.* v. *Fred T. Ley & Co. Inc.* 269 Mass. 272, 278. The person to whom the representation is addressed is bound by what is apparent from the subject matter under discussion, and where one makes a statement as of his own knowledge relative to the subject matter, not susceptible of actual knowl-

edge, it is held to amount to nothing more than an expression of strong belief, and it must be so understood and considered. In *Spead* v. *Tomlinson*, 73 N. H. 46, it was said at page 61: "When a representation relates to a matter not susceptible of personal knowledge, it cannot be considered as anything more than a strong expression of opinion, notwithstanding it is made positively and as of the maker's own knowledge. The mere fact that it is stated positively cannot make it a statement of fact. The most any one can do as to such matters is to express his opinion. It cannot be found, from the single fact that such a statement is untrue, that it was made with fraudulent intent; there must also be evidence that the maker knew it was in some respect untrue, before there is anything to submit to the jury." The defendant is, therefore, left in the position where the representations made are not fraudulent so as to avoid the contract unless the maker of the representations knew them to be untrue, *Pike* v. *Fay*, 101 Mass. 134, 137; *Spead* v. *Tomlinson*, 73 N. H. 46, 61, and there is no evidence in the case at bar to warrant a finding that he did.

The case is distinguishable from *Chatham Furnace Co.* v. *Moffatt*, 147 Mass. 403. There the material question was whether a mass of iron ore "which did in truth exist under ground" was within the boundaries of the land included in the defendant's lease, and the material part of the defendant's statement was, that it was in his ore bed. During the negotiations, the defendant exhibited to the plaintiff a plan of the survey of the mine which had been made for him, and, in the making of which, the surveyor, to the defendant's knowledge and assent, did not take the course of the first line leading from the shaft through which the mine was entered but assumed it to be due north, and the defendant never took any means to verify this line. In point of fact, this line did not run due north. If it had, the survey would have shown the mass of ore in question to have been within the bounds of the land covered by the defendant's lease. But because of this erroneous assumption, the survey was misleading, the iron ore being in fact outside these boundaries. "It thus appears that the defendant

knew that what purported to be a survey was not in all respects an actual survey . . . . The defendant took it upon himself to assert, as of his own knowledge, that this large mass of ore was in his ore bed, that is, within his boundaries . . . . Now this statement was clearly of a thing which was susceptible of knowledge." (Pages 405–406.) It was held that it might properly be found that the charge of fraudulent misrepresentations was sustained, although the defendant believed his statement to be true. In other words, in the *Chatham Furnace Co.* case, the statement in question was of a matter susceptible of knowledge.

The rule applied in the case at bar, relating to a representation as to a fact not susceptible of actual knowledge, is more clearly understood if the standpoint of the one to whom the statement is made is considered. That is, when he hears such a statement the rule in effect leaves him in this position: that regardless of what has been said about the matter, or of how strongly the statement has been put, he knows that the speaker cannot actually know what the fact of the matter is, and that, therefore, he is not justified in relying on what can, in its nature, be nothing more than the opinion, however strong, of the speaker on the matter. Our rule finds other support. *Gordon* v. *Butler*, 105 U. S. 553, 556–557. *Tuck* v. *Downing*, 76 Ill. 71, 95. *Crocker* v. *Manley*, 164 Ill. 282, 289–290. *Holbrook* v. *Connor*, 60 Maine, 578, 580–581. *Watts* v. *Cummins*, 59 Penn. St. 84, 89.

*Judgment for plaintiffs on the verdict.*