**MAGNAT CORPORATION et al.,**
**Defendants, Appellants,**

v.

**B & B ELECTROPLATING CO., Inc.,**
**Plaintiff, Appellee.**

**B & B ELECTROPLATING CO., Inc.,**
**Plaintiff, Appellant,**

v.

**MAGNAT CORPORATION et al.,**
**Defendants, Appellants.**

**Nos. 6638, 6639.**

United States Court of Appeals
First Circuit.

Heard March 8, 1966.

Decided April 11, 1966.

Harold Katz, Boston, Mass., with whom James C. Hamilton, Boston, Mass., was on brief, for Magnat Corp. and others.

Albert P. Zabin, Boston, Mass., with whom Edward M. Swartz, Boston, Mass., was on brief, for B & B Electroplating Co., Inc.

Before ALDRICH, Chief Judge, McENTEE and COFFIN, Circuit Judges.

ALDRICH, Chief Judge.

This is a diversity action containing counts in tort for deceit and in contract, with a counterclaim for the return of money advanced. Following jury verdicts for plaintiff on the tort claims, and for the corporate defendant on the contract claim and on its counterclaim, all parties appeal.

Plaintiff, B & B Electroplating Co., is a New Jersey corporation whose prinpal officers and employees are E. Brown and H. Brown. In 1962 it was engaged in copperplating, chiefly extruded aluminum busbars. Defendant Magnat Corporation is a Massachusetts corporation which makes steel and aluminum cylinders of the type used as rollers in the printing trade. For this purpose they must be copperplated. Magnat's cast aluminum cylinders, while potentially desirable because of their light weight, were difficult to plate because of their porosity. In 1962 defendant Bernard, Magnat's principal officer, learned that

plaintiff had successfully plated three of Magnat's aluminum cylinders. Bernard called upon plaintiff and asked if it would be willing to do some more on order. As a result, plaintiff plated thirty-four aluminum cylinders, only two of which were ultimately unacceptable. Bernard then called on the Browns, congratulated them on their success, and suggested that plaintiff move to Massachusetts to do Magnat's aluminum work. Plaintiff was reluctant, but, for reasons discussed below, was persuaded to move. The venture was a total failure, and plaintiff suffered considerable loss.

In the tort action, plaintiff claimed that both its moving and the venture's failure were caused by three misrepresentations made by Bernard on behalf of Magnat: that Magnat "had a substantial demand for and orders for aluminum rollers"; that it had the capacity to produce aluminum cylinders suitable for plating; and that the orders would not fall below 20,000 square inches a day. Bernard testified that he spoke to all of these matters, but only in terms of hope. The Browns testified that he spoke in terms of affirmative statements of fact.

In denying the post trial motions based upon alleged lack of evidence the court said, in part,

"My view is that Bernard scrupulously told the truth, both during the business negotiations with the Browns and at the trial before the Court and jury. Yet I can understand that the Browns were in good faith (though I believe mistaken) when they testified that they interpreted Bernard's words to mean not merely that he expressed his honest opinion as to the business B & B might get, but also he represented the actual business which was already available and would flow to B & B if the Easthampton plant were begun. I also understand how, when the Browns testified as to their interpretation, a jury could reasonably find that the Browns were telling the truth, that a reasonable man would have interpreted Bernard's words in the sense in which the Browns interpreted them, that Bernard made representations of fact as to specific items of future of business, that those representations of fact were material, that they were intended to induce reliance by B & B, that they actually did induce such reliance, and that such reliance caused damage to B & B in the amount of $22,500."

We have reviewed the record, and find substantial basis for this statement, construing it, as we construe the substance of the Browns' testimony, to mean that Bernard represented not that he had actual orders for aluminum, but a present potential in the amount stated. Plaintiff's difficulty here, in our opinion, is not the asserted one, that it failed to show that these representations were made. Rather, it failed to show their falsity. Plaintiff's lack of success was due simply to its inability to plate the cylinders supplied to it by Magnat. If the total demand was overstated, it is clear that plaintiff could not satisfy even what demand there was.

This brings us to what we consider the nub of this portion of the case. It is common ground between the parties that, although plaintiff eventually successfully plated thirty-two of the thirty-four cylinders originally submitted by Magnat, many had to be done over, some more than once, before they were acceptable. When Bernard suggested that plaintiff move to Massachusetts, the Browns both said that they could not profitably do so unless Magnat were able to remedy the porosity of its cylinders. Bernard replied that Magnat was moving its plant and buying all new foundry equipment. By Bernard's version, he merely "hoped" the surface of the new product would be better. E. Brown testified that Bernard stated flatly that "the new product would be similar to an extrusion," i. e., relatively nonporous. H. Brown testified:

"[We told Bernard that] 'we could not live with the surface we are now plating.' He says, 'Well, there shouldn't be too much concern as far as that goes.' So he said he would be

or he could assure us that our surface that we would receive from him would be of the same appearance as the [extruded] bar we were doing in the shop that particular time. * * * Mr. Bernard explained that there would be no worries in the surface of the material."

None of this testimony was shaken on cross-examination. Concededly, Magnat's new product proved to be no different from its old.

■ The jury clearly was warranted in believing the Browns' account of these conversations rather than Bernard's. It could have found that the Browns reasonably construed Bernard's statements not as mere "sellers talk," or prophesies of facts presently unascertainable, Harris v. Delco Products, Inc., 1940, 305 Mass. 362, 25 N.E.2d 740; Yerid v. Mason, 1960, 341 Mass. 527, 170 N.E.2d 718, but as representations of the existing and known fact that the equipment to be installed in the new plant produced aluminum comparable in porosity to the extruded metal. Cf. Pietrazak v. McDermott, 1960, 341 Mass. 107, 167 N.E.2d 166; Chatham Furnace Co. v. Moffatt, 1888, 147 Mass. 403, 18 N.E. 168. The evidence would warrant the conclusion that Bernard misrepresented that he knew the capabilities of the new equipment, and that plaintiff reasonably relied on the misrepresentation to its detriment.[1] There was no error in permitting the verdicts to stand on the counts for deceit.

This would be the end of this part of the case were it not for the fact that in refusing to set aside the verdicts in the tort action or to direct verdicts for the defendants, the district court made some broad statements[2] that we would not wish to be thought, by affirming the judgment, to approve *sub silentio*. Although, as previously quoted, the court held that the jury could reasonably find in plaintiff's favor, in a subsequent paragraph it said that it was doing so, in part, in recognition of our recent rulings "which allow tort plaintiffs to recover on a scintilla of evidence."

■ The court did not identify any decisions of this court which in terms support the scintilla rule, and we are aware of no express mention since United States v. Krumsiek, 1 Cir., 1940, 111 F.2d 74, where we specifically condemned it. Possibly the court meant that our general view, nonetheless, is that tort plaintiffs are entitled to go to the jury even though unsupported by substantial evidence. Some plaintiffs, at least, would be surprised to hear this.[3] Particularly, we wonder how a decision like Dehydrating Process Co. v. A. O. Smith Corp., 1 Cir., 1961, 292 F.2d 653, cert. den. 368 U.S. 931, 82 S.Ct. 368, 7 L.Ed.2d 194, could be squared with such a conclusion.[4] Be that as it may, the district court has seriously misstated our position, and we so note. The rule in this circuit remains that a scintilla of evidence is insufficient.

1. Lest we be thought to have ignored it, we note that defendants' claim that recovery for this oral misrepresentation is barred by the statute of frauds is untenable. Schleifer v. Worcester North Savings Inst., 1940, 306 Mass. 226, 27 N.E.2d 992.

2. B. & B. Electroplating Co. v. Magnat Corp., D.Mass., 1965, 245 F.Supp. 9, 11–12.

3. See, e. g., Arena v. Luckenbach Steamship Co., 1 Cir., 1960, 279 F.2d 186, cert. den. 364 U.S. 895, 81 S.Ct. 222, 5 L.Ed.2d 189; New York Central R. R. v. Moynihan, 1 Cir., 1964, 338 F.2d 644, cert. den. 381 U.S. 905, 85 S.Ct. 448,

14 L.Ed.2d 285; Naumkeag Theatres Co. v. New England Theatres, Inc., 1 Cir., 1965, 345 F.2d 910, cert. den. 382 U.S. 906, 86 S.Ct. 241, 15 L.Ed.2d 158; New York, N. H. & H. R. R. v. Cragan, 1 Cir., 1965, 352 F.2d 463, cert. requested. It is true that we erroneously minimized the plaintiff's burden in one F.E.L.A. case, New York N. H. & H. R. R. v. Henagan, 1 Cir., 1959, 272 F.2d 153, rev'd 364 U.S. 441, 81 S.Ct. 198, 5 L.Ed.2d 183.

4. In the cited case we held that in deciding whether to direct a verdict for lack of substantial evidence the court could look, to some extent, to the defendant's evidence.

The court's refusal to direct a verdict was not error, even though it may have acted in part under a mistaken conception of the applicable rule. Nor was there an abuse of discretion in its refusal to grant a new trial. As we have pointed out, plaintiff's case was substantially supported.

██ We find no merit in the cross-appeal. Plaintiff sought to couch, or to interpret, the Browns' testimony of the oral conversation in terms of an express contract. Defendants, besides denying that any contract was made, pleaded the section of the statute of frauds requiring a writing for contracts not performable in one year. Mass.Gen.Laws, c. 259, § 1. The length of time Magnat was to supply the plaintiff with aluminum cylinders at the rate of 20,000 square inches a day was never expressed, in so many words, by any party. Plaintiff makes a plausible argument that the supposed contract could have been performed in less than a year. We need not explore it. Both Browns testified flatly that the contract could not be performed within a year. Plaintiff complains that this testimony was elicited by questions from the court, but this is irrelevant. Even if plaintiff's witnesses could be thought to have misinterpreted the contract, their testimony was neither withdrawn nor modified. It left at least as an issue of fact the question whether the contract could have been performed within a year.[5]

██ ██ Plaintiff further contends that the court erred in instructing the jury to determine whether plaintiff's board had authorized the alleged contract, because defendant admitted authorization, and because plaintiff's bringing of suit constituted ratification as a matter of law. Plaintiff's first argument reads

considerably more into the complaint and answer than their language warrants. Whatever merit the second may have, it should have been put to the trial judge. When, as here, the grounds for objection are not clear from the nature of the objection itself, a party cannot wait until he reaches the appellate court to explain them. Fed.R.Civ.P. 51; Curko v. William Spencer & Son Corp., 2 Cir., 1961, 294 F.2d 410; cf. Krock v. Electric Motor & Repair Co., 1 Cir., 1964, 327 F.2d 213, 217, cert. den. 377 U.S. 934, 84 S. Ct. 1338, 12 L.Ed.2d 298. This ground for the objection was brought out no more clearly in plaintiff's earlier objections to questioning along the same lines.

██ Finally, plaintiff contends that Magnat's successful counterclaim for the return of monies advanced could not be maintained without a prior demand, since there had to be an "accounting." Neither of the cases cited by plaintiff contradicts the well-established rule that bringing suit constitutes adequate demand. Cassiani v. Bellino, 1959, 338 Mass. 765, 157 N.E.2d 409; Burnham v. Allen, 1854, 67 Mass. 496. In Pomroy v. Gold, 1841, 43 Mass. 500, plaintiff's action failed because defendant was not in breach of contract until the plaintiff tendered performance on his part. In Bolles v. Stearns, 1853, 65 Mass. 320, when the defendant had an option to perform in either of two ways, the plaintiff could not maintain an action which, in effect, compelled performance in one way, unless the defendant had refused to perform in either. By the time of the present suit, there was nothing plaintiff could properly have done with what remained of the monies advanced other than to return them to defendant.

Affirmed.

5. Plaintiff's claim that its reliance on the alleged contract estops defendant from pleading the statute is inapposite in an action on a contract for damages. Bruni v. Andre, 1959, 339 Mass. 708, 162 N.E. 2d 52; Andre v. Ellison, 1949, 324 Mass. 665, 88 N.E.2d 340.