DAVID GOPEN & others,[1] trustees, vs. AMERICAN SUPPLY
COMPANY, INC.[2]

Suffolk.    March 13, 1980. — July 24, 1980.

Present: GRANT, GREANEY, & DREBEN, JJ.

Corporation, Subsidiary, Corporate entity.  Agency, What constitutes.
    Fraud.  Damages, Deceit.  Consumer Protection Act, Retroactivity,
    Unfair act or practice.

In an action seeking to hold a parent corporation liable on a lease signed
    by its wholly owned subsidiary, evidence that the parent corporation
    used the subsidiary to enter into the lease to protect itself against un-
    foreseen business developments, that the parent paid the rent to the
    subsidiary which in turn paid the lessor, that the corporations had the
    same officers and directors, and that the subsidiary had no employees,
    files or offices of its own warranted a finding that the subsidiary was
    the agent of its parent corporation in leasing the premises. [344-345]
In an action seeking to hold a parent corporation liable on a lease signed
    by its wholly owned subsidiary, there was sufficient evidence to war-
    rant findings that the parent corporation misrepresented the subsidi-
    ary's financial condition and that the misrepresentation induced the
    lessor to enter into the lease [345-346]; the parol evidence rule did not
    preclude the admission of a letter from the parent corporation's at-
    torney to the lessor in which the net worth of the subsidiary was mis-
    represented [346].
The measure of damages in an action on a lease on a theory that a parent
    corporation misrepresented the financial condition of its subsidiary
    was not limited to the amount of the subsidiary's net worth as misrep-
    resented by the parent.  [346]
Plaintiffs in an action alleging that a parent corporation engaged in unfair
    and deceptive practices in connection with a lease agreement entered

---

[1] Sara E. Gopen and David Presson, also trustees of Century Building
Trust.

[2] Kelmerchanic Realty Corporation was a defendant in the Superior
Court.  A judgment on the pleadings was entered against Kelmerchanic.
There was no appeal taken from that judgment.

into by a subsidiary corporation were not entitled to relief under G. L. c. 93A where the lease was signed prior to the enactment of c. 93A and, although the subsidiary continued to lease the premises after the date of enactment, no unfair or deceptive practices were engaged in subsequent to the signing. [346-350]

CIVIL ACTION commenced in the Superior Court on March 10, 1976.

The case was tried before *Coddaire*, J.

*John O. Mirick* for the defendant.

*John C. Wyman* (*Steven D. Gopin & Johanna Smith* with him) for the plaintiffs.

DREBEN, J. The primary issues raised on these appeals are whether there was sufficient evidence to hold a parent corporation, American Supply Company, Inc. (American), liable on a lease signed by its wholly owned and impecunious subsidiary, Kelmerchanic Realty Corporation (Kelmerchanic), and whether the parent is subject to liability to the landlord under G. L. c. 93A on a lease entered into in 1967, prior to the enactment of c. 93A by St. 1967, c. 813, § 1.

Two judgments here relevant were entered in the Superior Court. The first, entered after a jury verdict, awarded the plaintiffs, the trustees of Century Building Trust (Century), damages against American for failure to make payments under the lease. The second was entered for American, pursuant to the judge's determination that American had not engaged in an unfair or deceptive practice under G. L. c. 93A. We affirm both judgments.

1. American contends that its motions for a directed verdict and for judgment notwithstanding the verdict should have been allowed on the ground that there was insufficient evidence before the jury to hold American liable on the lease. Taking the evidence most favorable to the plaintiffs, as we must in reviewing American's claims, *Boyle* v. *Wenk*, 378 Mass. 592, 593 (1979), we conclude that there was sufficient evidence for the jury to find American liable for the rent under the lease on either of the two grounds on which the case was submitted to them.

(a). There was sufficient evidence for the jury to find that Kelmerchanic was the agent of American in leasing the premises. The facts, as viewed under the standard stated in *Boyle* v. *Wenk, supra,* were that in January, 1967, American desired to lease the second floor of a building on Washington Street in Boston owned by Century. American's policy was to insulate itself against long term commitments and, in furtherance of this policy, it used subsidiary corporations to enter into leases and other contracts so as to protect itself against unforeseen business developments. This was the reason for having Kelmerchanic sign the lease. American paid Kelmerchanic rent, and Kelmerchanic in turn paid the plaintiffs the same amount it received from American. The two corporations had the same officers and directors. Kelmerchanic had no employees, files or offices of its own. Its only source of income was American, and Kelmerchanic never made any distributions or declared any dividends.

The jury could have found American liable for rental payments under the lease on principles enunciated in *My Bread Baking Co.* v. *Cumberland Farms, Inc.,* 353 Mass. 614, 618-619 (1968). "Although common ownership of the stock of two or more corporations together with common management, standing alone, will not give rise to liability on the part of one corporation for the acts of another corporation . . . additional facts may be such as to permit the conclusion that an agency or similar relationship exists between the entities. Particularly is this true . . . when there is active and direct participation by the representatives of one corporation, apparently exercising some form of pervasive control, in the activities of another and there is some fraudulent or injurious consequence of the intercorporate relationship . . . ." *Id.* at 619. Here the jury could have found that American exercised pervasive control over the activities of Kelmerchanic, that the latter corporation was availed of solely to carry out the purposes of American, that as part of this plan misleading representations were made by American to Century as to Kelmerchanic's assets (see part [b] below) and that American's intercorporate relation-

ship with Kelmerchanic resulted in injurious consequences. *My Bread Baking Co.* v. *Cumberland Farms, Inc.*, 353 Mass. at 619, and cases cited at 618-619. *Chelsea Indus., Inc.* v. *Florence*, 358 Mass. 50, 60 (1970).

(b). The jury could also have found American liable to Century on the basis of misrepresentation. There was evidence that American in 1967, through its attorney, who was also Kelmerchanic's counsel, wrote to the plaintiffs' attorney in response to a request for a financial statement of Kelmerchanic, that Kelmerchanic "will have a net worth of $25,000 or more". There was also evidence that the plaintiffs relied on this representation in entering into the lease and that the representation was false. A tax return, prepared shortly after the letter was sent, showed that Kelmerchanic's total assets were $927.98. The extent of the assets of the corporation was a matter susceptible of actual knowledge and was not a matter of opinion. See *Lowell Gas Co.* v. *Attorney Gen.*, 377 Mass. 37, 53-54 (1979).

Even if the statement is viewed as a representation as to future events, it falls within the exception to the general rule precluding recovery as it involves a situation "where the parties to the transaction are not on equal footing but where one has or is in a position where he should have superior knowledge concerning the matters to which the misrepresentations relate." Williston, Contracts § 1496, at 373-374 (3d ed. 1970). *Cellucci* v. *Sun Oil Co.*, 2 Mass. App. Ct. 722, 730 (1974), *S.C.*, 368 Mass. 811 (1975). American's statement that Kelmerchanic would have a specified net worth "is not like a prediction as to the weather." *Id.* It involves a representation concerning the internal finances of a wholly owned subsidiary over which the parent had virtually exclusive control. Thus, the jury could have found that American misrepresented Kelmerchanic's financial condition, and that the misrepresentation induced Century to enter into the lease.

Since there was sufficient evidence for the jury to find American liable either on principles of agency or on grounds of misrepresentation, there was no error in the denial of

American's motions for a directed verdict and for judgment notwithstanding the verdict.

2. Nor was there error in the admission of the letter from American's attorney to show that the misrepresentation induced the plaintiffs to enter into the lease with Kelmerchanic. The introduction of the letter was not precluded by the parol evidence rule. *Butler* v. *Prussian*, 252 Mass. 265, 268 (1925). *Harris* v. *Delco Prod., Inc.*, 305 Mass. 362, 364 (1940).

3. The defendant contends that the measure of damages, if entered on the theory of misrepresentation, should be limited to the benefit of the bargain which it argues is $25,000. That figure is not the measure of the benefit of the bargain as Century was induced to enter a lease with what it thought was a going and solvent concern. In any event, the benefit of the bargain is not the sole measure of damages in a misrepresentation action. *Thomson* v. *Pentecost*, 210 Mass. 223, 227 (1911). *David* v. *Belmont*, 291 Mass. 450, 453 (1935). *Rice* v. *Price*, 340 Mass. 502, 508-510 (1960). See generally Prosser, Torts § 110, at 733-734 (4th ed. 1971). Nolan, Tort Law § 116 (1979).

4. The judge, pursuant to an agreement that the c. 93A claim was to be heard by him, found the following facts.[3] At the time that Century entered into the lease in 1967, it knew that Kelmerchanic intended to sublease the space to American. It also knew that Kelmerchanic was a corporation controlled by American "with one of its purposes being to keep American Supply from the long term obligations of a tenant under the Century lease while obtaining" its benefits. Century's attorney, during the course of the negotiations, had asked for financial statements of Kelmerchanic. In a letter of response, the attorney who had been employed by both American and Kelmerchanic had written that Kel-

---

[3] Our narrative in part 1, *supra*, was based on the standard set forth in *Boyle* v. *Wenk, supra*. The judge, however, was not required to find the facts most favorable to the plaintiffs, and there is no indication in the record that the parties made any claim to him that he was bound by the jury's findings.

merchanic "will have a net worth of $25,000 or more." No evidence appeared indicating a net worth of $25,000 or more except that statement. The judge found that during the lease negotiations, the attorney for Century did not take into account the net worth of Kelmerchanic, but the judge made no finding as to whether the trustees of Century relied on this representation.

The lease provided Kelmerchanic with an option for an additional five years' renewal at a higher rent to be established by arbitration. In 1971, representatives of American negotiated with Century for the rental of the second five-year term and agreed on a rental. On July 30, 1971, Century and Kelmerchanic executed an amendment of the lease setting forth this rental. American moved into the Century space during the summer of 1967 and operated its retail business there until August, 1974, when it moved out and stopped paying rent to Kelmerchanic. The latter, in turn, made no further rental payments to the plaintiffs. Neither American nor Kelmerchanic gave Century any notice that American intended to move.

The judge ruled that c. 93A, § 11,[4] was applicable, although not enacted until 1972, on the ground that damages were being claimed for a period subsequent to its enactment. He also ruled, citing *PMP Associates* v. *Globe Newspaper Co.*, 366 Mass. 593, 596 (1975), that while American may have engaged in "astute business methods," these actions did not give rise to liability under c. 93A. We agree that the plaintiffs are not entitled to relief under c. 93A but for somewhat different reasons.

---

[4] Section 11, inserted by St. 1972, c. 614, § 2, provides in pertinent part: "Any person who engages in the conduct of any trade or commerce and who suffers any loss of money or property . . . as a result of the use . . . by another person who engages in any trade or commerce of . . . an unfair or deceptive act or practice declared unlawful by section two . . . may . . . bring an action . . . ."

Section 2(*a*), inserted by St. 1967, c. 813, § 1, reads as follows: "Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful."

We hold that American did not engage in any unfair or deceptive practice subsequent to the passage of G. L. c. 93A, by St. 1967, c. 813, § 1, and that c. 93A is not to be given retroactive application. We therefore find it unnecessary to determine whether American engaged in a deceptive practice prior to the statute's enactment and whether additional findings are needed as to whether the plaintiffs relied on the representations concerning the financial condition of Kelmerchanic. See *Slaney* v. *Westwood Auto, Inc.*, 366 Mass. 688, 703 (1975). But see *Bartner* v. *Carter*, 405 A.2d 194, 199-201 (Me. 1979); and Sebert, Enforcement of State Deceptive Trade Practice Statutes, 42 Tenn. L. Rev. 689, 740 (1975).

We find that neither in 1971 when the lease was amended nor in 1974 when American moved out did American engage in any unfair or deceptive practice. No elements of deception or unfairness are alleged or can be found in the negotiations which led to the amendment of the lease in 1971. Nor can such elements be found in 1974. While the "loss of money or property" required to maintain a c. 93A action may have occurred in that year, *Frank J. Linhares Co.* v. *Reliance Ins. Co.*, 4 Mass. App. Ct. 617, 620-621 (1976); see *Baldassari* v. *Public Fin. Trust*, 369 Mass. 33, 44-46 (1975); *Frank Cooke, Inc.* v. *Hurwitz ante* 99, 111-112 (1980), no unfair or deceptive acts occurred at that time. The mere act of American in moving out in 1974, even if American were to be viewed as Century's tenant, is not enough to establish a c. 93A claim. See *Whitinsville Plaza, Inc.* v. *Kotseas*, 378 Mass. 85, 100-101 (1979) (not every breach of contract gives rise to a claim under c. 93A). See also *Mechanics Natl. Bank* v. *Killeen*, 377 Mass. 100, 109 (1979), ("not every unlawful act is automatically an unfair [or deceptive] one under G. L. c. 93A").

The crux of the plaintiff's claim of unfairness lies in the transaction and representation by which American was able to obtain possession of the premises in 1967 without being a signatory to the lease. Even if we assume that the prior acts of misrepresenting Kelmerchanic's assets or the "unfair" use

by American of Kelmerchanic at the time of the lease nego-
tiations as a device to insulate itself from liability were
deceptive, these occurred prior to the enactment of c. 93A.
To apply the taint of those earlier acts to the 1974 move by
American or to the 1971 amendment of the lease would, of
necessity, be making those earlier 1967 acts, which were not
a statutory violation when made, retroactively unlawful
under the statute. The Supreme Judicial Court, suggesting
constitutional overtones, has said that c. 93A is not to be so
applied. *Commonwealth* v. *DeCotis*, 366 Mass. 234, 244 ,
n.8 (1974), and accompanying text.

In a similar case, *CF Indus., Inc.* v. *Transcontinental
Gas Pipe Line Corp.*, 448 F. Supp. 475 (W.D.N.C. 1978),
the defendant, after the enactment of North Carolina's stat-
utory analogue of c. 93A, breached a contract entered into
prior to the passage of the act. The court, in that case, re-
fused to apply the statute, saying that the actions of the de-
fendant could only be rendered a violation by proof of con-
duct leading to the formation of the contract. Holding that
such an application would "create a new liability in connec-
tion with a past transaction" and would "amount to an un-
warranted retroactive operation of the statute," the court
denied the plaintiffs relief. *Id.* at 486. Other courts have
held that contracts entered into before the effective date of
consumer statutes but which required payments to be made
after such date are not governed by the new statutes in the
absence of unfair poststatute activities. See e.g., *Point East
One Condominium Corp.* v. *Point East Developers, Inc.*,
348 So.2d 32, 35 (Fla. Dist. Ct. App. 1977). See also *John-
ston* v. *Beneficial Management Corp. of America*, 85 Wash.
2d 637, 642 (1975). But see *Salois* v. *Mutual of Omaha Ins.
Co.*, 90 Wash. 2d 355, 360-361 (1978), and *Brown* v.
*Charlton*, 90 Wash. 2d 362, 368 (1978), which stated that
*Johnston* should not be understood to preclude the statute's
application to unfair postsale activities. Cf. *Woods* v. *Lit-
tleton*, 554 S.W.2d 662, 666 (Tex. 1977). Contrast *State ex
rel. Turner* v. *Limbrecht*, 246 N.W.2d 330, 333 (Iowa
1976).

The Supreme Judicial Court has stated that § 2 of c. 93A confers new substantive rights. *Heller* v. *Silverbranch Constr. Corp.*, 376 Mass. 621, 626 (1978). *Linthicum* v. *Archambault*, 379 Mass. 381, 383 (1979). In the absence of a clear legislative intent, statutes conferring such rights are not to be applied retroactively. *Hanscom* v. *Malden & Melrose Gas Light Co.*, 220 Mass. 1, 3 (1914). *Commonwealth* v. *DeCotis*, 366 Mass. at 244 n.8. That rule takes on additional significance where, as here, relationships created by a contract antedating the statute are challenged. Constitutional implications as well as considerations of stability and predictability strengthen our conclusion that c. 93A is not to be applied retroactively.

We hold, therefore, that the plaintiffs are not entitled to relief under c. 93A.

*Judgments affirmed.*