Agnes, A.J.
The plaintiffs, Allmerica Financial Corporation, SMA Financial Corporation, First Allmerica Financial Life Insurance Company, and Allmerica Financial and Life Insurance and Annuity Company (Allmerica), filed this action alleging breach of contract against the defendants, Certain Underwriters at Lloyd’s London Who are Members of Syndicates 1212, 435, 1173, 79, 1207, and 623 (Underwriters), arising from the excess insurance policy that Underwriters issued to Allmerica. The matter is before this court on *396 the defendant’s motion for summary judgment under Mass.R.Civ.P. 56 on the issue of liability. The plaintiff has filed a cross motion for summary judgment. For the reasons discussed below, the defendant’s motion for summary judgment is ALLOWED, and Allmerica’s cross motion for summary judgment is DENIED.
BACKGROUND
The parties appear in agreement that there are no disputed facts material to the resolution of this case. The undisputed facts set forth in the summary judgment record are as follows.
Allmerica is engaged in selling life insurance policies. In 1992, D.P. Jowers filed a lawsuit[1] (Jowers) against an affiliate of Allmerica alleging that the affiliate and/or its agent had engaged in “a pattern or practice of fraud or other intentional wrongful conduct” and its agent had made misrepresentation regarding the performance of Jowers’ policy. Allmerica’s affiliate ultimately reached a settlement agreement in the Jowers case.
In 1996, Columbia Casualty Insurance Company (CNA) issued insurance policy number 16180518 to Allmerica for coverage of $20 million dollars during the period of August 29, 1996 through July 1, 1997, relating to professional services liability. This policy was subject to a single $2.5 million dollar retention for each “claim” under the policy. In addition, Allmerica obtained an excess insurance policy, number 757/FD961641, of $10 million dollars through Underwriters for coverage during the same policy period. With this policy, Underwriters provided coverage in excess of the primary policy issued by CNA. The Underwriters’ policy was a “follow form” policy, which means that it incorporated the terms set forth in CNA’s primary policy. The following year, CNA and Underwriters provided Allmerica with renewed policies for the period of July 1, 1997 through July 1, 1998. These policies were practically mirror images of the policies that CNA and Underwriters had issued to Allmerica the year before.
In October 1997, a group of individuals filed a class action lawsuit in the Federal District Court of Massachusetts (Bussie Class Action) alleging improper sales practices by Allmerica “directly and through their nationwide sales force of agents, representatives and brokers” arising from alleged misrepresentations during the sale of life insurance policies. Among its complaints, the Bussie Class Action alleged that Allmerica had made misrepresentations, directly or through its agents, regarding the future value or performance of the policies. In addition, the Bussie Class Action claimed that Allmerica made misrepresentations, directly or through its agents, pertaining to a “vanishing premium” scheme.[2] Since 1990, Allmerica received about 700 complaints from its customers, 300 of which pertained to the actions alleged in the Bussie Class Action.
After discovery and negotiations, Allmerica and the Bussie plaintiffs reached a settlement in November of 1998. On March 19, 1999, Judge Gorton of the Federal District Court of Massachusetts issued a memorandum decision certifying the class and approving the settlement as fair, adequate, and reasonable. The settlement provided the approximately 400,000 members of the Bussie Class Action the option of General Policy Relief or Individualized Relief, which involved an alternative dispute resolution process to determine the level of relief that a class member was entitled to under criteria set forth in the settlement agreement. Allmerica incurred costs of approximately $39.4 million dollars arising from settlement payments, attorneys fees, administrative costs, and implementation of the Individualized Relief Plan.[3] After discussions between CNA and Allmerica, CNA agreed to pay the full amount of its policy to Allmerica, indicating that it interpreted the policy as covering the Bussie Class Action.
Upon review of the settlement agreement, Underwriters notified Allmerica that it interpreted the Bussie Class Action as not falling within the policy’s coverage. In particular, Underwriters drew attention to provisions IILb. and Ill.g. as the exclusions that it believed to be applicable. The language of the two provisions are set forth below.
Ill In addition to the Common Exclusions Applicable to All Liability Insuring Agreements, the Insurer shall not be liable to pay any Loss under this Insuring Agreement in connection with and Claim made against the Allmerica Financial Insureds . . .
b. based upon, directly or indirectly arising out of, or in any way involving:
(1) any Wrongful Act or any matter, fact, circumstance, situation, transaction or event which has been the subject of any Claim made against the Allmerica Financial Insureds prior to the Original Effective Date as stated in Item 8 of the Declarations; or
(2) any other Wrongful Act whenever occurring, which, together with a Wrongful Act which has been the subject of such Claim, would constitute Interrelated Wrongful Acts, provided, however, this exclusion shall not apply to a Claim for a Wrongful Act involving claim handling and adjusting; . . .
g. based upon, directly or indirectly arising out of or in any way involving any of the Allmerica Financial Insureds’ actual or alleged oral or written representation, promise or guarantee of the past performance or future value of any insurance product or investment product, provided this Exclusion shall not apply to any Claim arising out of a representation, promise or guarantee of a Contract Agent acting independent of the Allmerica Financial Insureds including representations not authorized by the Allmerica Financial Insureds and made by the *397 Contract Agent in conjunction with the Allmerica Financial Insureds’ authorized marketing materials; . . [4]
In light of Underwriters’ determination that the Bussie Class Action did not fall within coverage of the policy, Allmerica instituted this action for breach of contract.
In its motion for summary judgment, Underwriters sets forth the following theories upon which it seeks judgment as a matter of law: 1) Underwriters is not bound by CNA’s interpretation that the Bussie Class Action fell within coverage of the policy; 2) exclusions IILg. and Ill.b. are unambiguous and should be interpreted to preclude coverage of the Bussie Class Action; 3) the doctrine of “known loss” precludes the coverage of the Bussie Class Action based on Allmerica’s prior knowledge of a substantial probability that the claim would arise.
Allmerica challenges Underwriters’ reliance on the above theories and further asserts that Allmerica should be entitled to judgment as a matter of law because Underwriters is bound by CNA’s interpretation and the unambiguous exclusions do not apply to the Bussie Class Action. Allmerica has set forth two additional theories upon which it seeks summary judgment. Allmerica contends that the Bussie Class Action constituted a single proceeding, requiring a single retention under the policy, and that Underwriters previously made assurances of payment, which bars Underwriters from now contesting coverage.
DISCUSSION
Summary judgment shall be granted when there are no genuine issues of material fact, and the moving party is entitled to judgment as a matter of law. Mass.R.Civ.P. 56(c); Opara v. Mass. Mutual Life Ins. Co., 441 Mass. 539, 544 (2004). The burden of affirmatively demonstrating the absence of a triable issue and entitlement to judgment as a matter of law lies with the moving party. Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). The moving party can satisfy this burden by setting forth affirmative evidence negating an essential element of the opposing party’s case or by demonstrating that the opposing party has no reasonable expectation of proving an essential element of its case at trial. Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991); Kourouvacilis v. Gen. Motors Corp., 410 Mass. 706, 716 (1991). Once the moving party has met its burden, the non-moving party then must “respond by setting] forth specific facts showing that there is a genuine issue for trial.” Kourouvacilis, 410 Mass. at 716, citing Mass.R.Civ.P. 56(e).
Underwriters contends it is not bound by CNA’s determination that the Bussie Class Action fell within the primary policy’s coverage and likewise fell within the excess insurance policy issued by Underwriters.[5] Underwriters further contends that CNA’s interpretation of exclusions Ill.b. and Ill.g. are incorrect and a proper interpretation of the policy’s language would exclude the Bussie Class Action from coverage. Allmerica counters that CNA, as drafter of the policy, had interpreted the language as covering the Bussie Class Action following the settlement, and Underwriters, as a follow form excess insurer, is bound by CNA’s determination of the policy’s applicability. This appears to be an issue of first impression in the Commonwealth.
A brief discussion of follow form excess insurance policies may be instructive to the principles underlying this case. An excess insurance policy provides coverage of claims that are over and above the coverage under the primary insurance policy. When a policyholder reaches the limits of its primary policy under a claim, the excess policy typically covers the additional amounts provided by its coverage. In addition, a follow form policy “provide[s] coverage in accordance with the terms and provisions of the . . . primary [or underlying] policy.” Metropolitan Leasing, Inc. v. Pacific Employers Ins. Co., 36 Mass.App.Ct. 536, 543 n. 6, quoting Industrial Risk Insurers v. New Orleans Pub. Serv., Inc., 666 F.Sup. 874, 876 (E.D.La. 1987).
I. Whether Underwriters is Bound by CNA’s Interpretation of the Policy Language
Although a follow form excess insurer incorporates the terms set forth in the underlying primary policy, it does not necessarily follow that the excess insurer is subject to the primary insurer’s interpretation of those policy terms.[6] Under the principles of issue and claim preclusion, a final judgment involving the same parties is a requirement for precluding a party from raising a particular issue or claim. See Fireside Motors, Inc. v. Nissan Motor Corp., 305 Mass. 366, 372-73 (1985). It follows from that principle that a party not involved in the prior action cannot be precluded from arguing and defending its position. Id. Underwriters was not a party to the Bussie Class Action settlement and did not have a prior opportunity to defend its position. As a result, it should not be precluded from challenging the policy interpretation simply because CNA and Allmerica reached an agreement between themselves.
It is also well established that a “judgment” is a term of art, and a settlement does not qualify as ajudgment, particularly for purposes of preclusion analysis. See Clegg v. Butler, 424 Mass. 413, 424-25 (1997).[7] Parties may choose to settle a claim for a variety of reasons wholly unrelated to liability. Here, Allmerica disputes its liability arising from the Bussie Class Action but chose to settle the claims for various business and practical considerations such as time, expense, and business efficiency.[8] Requiring a party to follow the practical business decisions of other parties would be contrary to the principle and policy of issue and claim preclusion. CNA’s concession of coverage in settling the Bussie Class Action could just have easily been *398 made for a business decision rather than the true application of the policy language.[9] It is contrary to the underlying principles and policies of settlements, arbitration, and preclusion to bind Underwriters to a decision made between CNA and Allmerica as business entities rather than a determination by a judgment of a court to which Underwriters was a party.[10] Pursuant to this interpretation, Underwriters has carried its burden of showing that it should not be bound by CNA’s interpretation. For the same reasons articulated above, Underwriters’ attempt to invoke issue and/or claim preclusion against Allmerica based on its settlement is equally unavailing, particularly because the federal court made no findings as to the merits or defenses of the parties.
II. The Interpretation of the Challenged Policy Provisions
Underwriters bears the burden of proving that the exclusions apply, but upon that showing, Allmerica must prove that an exception to that exclusion is applicable. Highlands Ins. Co. v. Aerovox, Inc., 424 Mass. 226, 230-31 (1997).
Having determined that Underwriters is not bound by CNA’s interpretation of the policy language, the court now addresses the arguments regarding the interpretation of the challenged clauses. The interpretation of insurance policy language is a question of law that the court determines. Chemard v. Commerce Ins. Co., 440 Mass. 444, 445 (2004); Cody v. Conn. Gen Life Ins. Co., 387 Mass. 142, 146 (1982). In this case, the parties agree that the policy language is unambiguous; they simply differ in their respective positions regarding the interpretation of that language.[11] See Lumbermens Mut. Casualty Co. v. Offices Unlimited, Inc. &Fed. Ins. Co., 419 Mass. 462, 466 (1995) (noting that an ambiguity is not created by the parties favoring different interpretations).
If either exclusion applies to the Bussie Class Action, then Underwriters would not owe a duty to make payments under the policy and would be entitled to judgment as a matter of law.
A. Interpretation of Provision IILg.
When interpreting the provisions of an insurance policy, every word is presumed to have purpose and should be analyzed as such whenever practicable. Wrobel v. Gen. Accident Fire & Life Assurance Corp., 288 Mass. 206, 209-10 (1934). In the absence of ambiguity, terms in a contract, particularly exclusion clauses, are to be interpreted according to their plain and ordinary meaning. Hakim v. Massachusetts Insurers’ Insolvency Fund, 424 Mass 275, 281-82 (1997). This court finds the language of provision IILg. unambiguous and as such strictly construes the policy from the plain meaning of its terms. Id. As this provision is unambiguous, this court will not consider extrinsic evidence in determining the policy’s application. See Somerset Savings Bank v. Chicago Title Ins. Co., 420 Mass. 422, 428 (1995); Herson v. New Boston Garden Corp., 40 Mass.App.Ct. 779, 791-92 (1996).
Provision IILg. excludes claims of “actual or alleged oral or written representations, promise or guarantee” by Allmerica concerning the performance of its insurance products and policies.[12] In Massachusetts, it is well settled that an insurer is liable for the actions of its agents within the scope of the agent’s authority. See Shumway v. Home Fire & Marine Ins. Co., 301 Mass. 391, 393-94 (1938). Allmerica concedes that its agents had apparent authority to make the misrepresentations that are at issue in this case. Unless the exception applies, the claim in the Bussie Class Action would fall within the exclusion to the policy. The exception provides coverage for claims arising from “a representation, promise or guarantee of a Contract Agent acting independent” of Allmerica “including representations not authorized” by Allmerica which were made in conjunction with Allmerica’s marketing materials. The ultimate issue of whether these representation by Allmerica’s sales agents were authorized by Allmerica is a material question of fact that remains unanswered.[13] As a result, this material issue of fact precludes summary judgment for either party on this issue.
B. Interpretation of Provision Ill.b.
The relevant language of provision Ill.b. is as follows.
In addition to the Common Exclusions Applicable to All Liability Insuring Agreements, the Insurer shall not be liable to pay any Loss under this Insuring Agreement in connection with any Claim made against the Allmerica Financial Insureds . . .
b. based upon, directly or indirectly arising out of, or in any way involving:
(1) any Wrongful Act or any matter, fact, circumstance, situation, transaction or event which has been the subject of any Claim made against the Allmerica Financial Insureds prior to the Original Effective Date as stated in Item 8 of the Declarations; or
(2) any other Wrongful Act whenever occurring, which, together with a Wrongful Act which has been the subject of such Claim, would constitute Interrelated Wrongful Acts, provided, however, this exclusion shall not apply to a Claim for a Wrongful Act involving claim handling and adjusting
Provision Ill.b. is also unambiguous. As such, it will be interpreted according to the plain and ordinaiy meaning of its terms. Hakim, 424 Mass, at 281-82. The plain language of provision Ill.b. provides an exclusion from coverage of any claim brought against Allmerica that “directly or indirectly [arose] out of, or in any way [involved]” a wrongful act that had been the subject of a claim prior to the policy or if any claim against Allmerica was interrelated with any prior claim. Although exclusions are narrowly construed, *399 the veiy language of this provision is broad in its application. This provision excludes claims that are connected in some way to “any matter, fact, circumstance, situation, transaction or event” of a claim that Allmerica had faced previously.
Allmerica contends that the Jowers action from 1992 is not related in any way to the Bussie Class Action claim.[14] The policy defines an interrelated wrongful act as “any Wrongful Acts which are logically or casually connected by reason of any common fact, circumstance, situation, transaction or event.” Underwriters has presented evidence in the form of the Jowers complaint which sets forth allegations of fraud and misrepresentation by one of Allmerica’s affiliates and/or its sales agent as to the future performance of the policy. The situation and allegations in Jowers are very similar to the ones presented in the Bussie Class Action regarding allegations of misrepresentation by Allmerica and/or its sales agents as to past or future values of policies. Allmerica asserts that the Jowers case was based on alleged representations by its agent and not by Allmerica itself. This is the vexy same argument that Allmerica raised with regard to the inapplicability of provision Ill.g., claiming that the agents alone were the cause of these misrepresentation. Although Allmerica asserts that the Jowers case involved “a different policyholder, a different agent, a different transaction, and different events” than the Bussie Class Action, such factual nuances disregard the actual terms of the provision, which has broader application as evidenced by its “in any way involving” language. The mere fact that a different agent was involved is of no consequence to the actions’ commonalities.
Also immaterial to the application of Ill.b. is the fact that the Jowers case and the Bussie Class Action were both settled without specific findings of facts. The policy defines a “Loss” as “damages, settlements, judgments and Defense Costs for which the Allmerica Financial Insureds’ are obligated to pay.” The definitions of the policy also provide for exclusion if the claims are logically or causally connected in any way. The fact that the plaintiff in Jowers would likely have been a class member of the Bussie Class Action but for the settlement in the Jowers case is quite telling of the relationship between the two cases. The multitude of similarities between these two actions place the Bussie Class Action squarely within the exclusion language of Ill.b.
The parties also dispute whether multiple retentions[15] should apply based on their respective interpretations of provision Ill.b.[16] Based on the unambiguous language of provision Ill.b., however, a determination of whether a single or multiple retentions apply is unnecessary to the resolution of this case. Therefore, Underwriters is entitled to judgment as a matter of law on the issue of its liability.
III. Application of the “Known Loss” Doctrine
Even if provision Ill.b. were inapplicable to the Bussie Class Action, the “known loss” doctrine would exclude coverage and entitle Underwriters to judgment as a matter of law. This doctrine follows the basic principle of insurance as aiming to protect against risks, not certainties. SCA Servs., Inc. v. Transp. Ins. Co., 419 Mass. 528, 532-33 (1995). The doctrine, therefore, eliminates coverage of a loss that had already happened or the insured knew was highly probable to occur. Id. The “known loss” doctrine requires an initial determination as to whether there are any factual questions as to Allmerica’s knowledge of the existence of claims under the Bussie Class Action at the time it purchased the policy. Id.
The burden lies with Underwriters to show that Allmerica subjectively knew of a probable loss when it sought coverage under the policy. See id. Underwriters points to a number of letters, produced by Allmerica in discovery, that Allmerica received from customers regarding deficiencies in their policies, pointing to representations made when they purchased the policies. In addition, Underwriters presents a letter dated July 27, 1998, addressed to Allmerica’s Vice President of Risk Management, Ms. Patricia Coyle, from CNA’s counsel that discusses the Bussie Class Action. On this letter is a handwritten notation acknowledging that, since 1990, Allmerica had received about 700 complaints, 300 of which were “of the type in the [Bussie Class Action].” Id. Allmerica disputes this notation on the grounds that Underwriters has not pointed to any specifics regarding these complaints, but Underwriters need only show that Allmerica subjectively knew of these complaints and that a probable loss would occur.
Underwriters also highlights that the Bussie Class Action was filed against Allmerica only a few weeks after the effective date of the renewal policy. Allmerica admits that litigation concerning improper sales practices by insurers and agents were “widely known in the insurance industxy,” and that Allmerica sought additional insurance coverage for those exact types of claims. Allmerica’s characterization of the approximately 300 complaints as “minuscule” in comparison to' the approximately 400,000 class members is unconvincing. The facts presented by Underwriters show that Allmerica knew of this probable loss when it sought coverage, making it a substantial probability that Allmerica would face lawsuits arising from these complaints. See SCA Servs., 419 Mass, at 532-33. In addition, Allmerica has failed to set foi-th specific facts that raise a genuine issue as to its knowledge of the probability of a loss stemming from the complaints. See Kourouvacilis, 410 Mass. at 716. This court, therefore, finds there are no factual questions as to Allmerica’s knowledge. Under the “known loss” doctrine, the Bussie Class Action is precluded from coverage, entitling Underwriters to summary judgment.
*400 IV. Underwriters’ Assurances of Coverage
Aside from the contractual issues addressed supra, Allmerica asserts an equitable claim based on alleged assurances of payment that Underwriters gave to Allmerica, which it argues should bar Underwriters from now denying coverage. See Boylston Devel. Group Inc. v. 22 Boylston St. Corp., 412 Mass. 531, 542 n.17 (1992) (discussing elements of estoppel theories). Allmerica relies on a letter, dated November 4, 1998, from Underwriters as assurance that Underwriters would provide coverage under the Bussie Class Action. Allmerica points specifically to the statement that Underwriters “would expect to make an indemnity payment in connection with [the Bussie Class Action].” Underwriters points to the full context in which the statement was made and the conditional language immediately preceding this statement as negating Allmerica’s contention. The preceding language states that “assuming that there is a covered loss in excess of both the limits of the primary policy and the applicable retention, and assuming that CNA has paid its full policy limits of $20 million, Underwriters would expect to make an indemnity payment in connection with the [Bussie Class Action].” Additional language in the letter expresses Underwriters’ reservation of rights as to coverage issues.[17] Based on the plain reading of the language, Allmerica has failed to meet its burden of establishing that no genuine issues of material fact exist regarding this issue. Cf. Somerset Savings Bank v. Chicago Title Ins. Co., 420 Mass. 422, 428 (1995) (holding that the absence of ambiguity requires an interpretation of the plain language of the document); Herson v. New Boston Garden Corp., 40 Mass.App.Ct. 779, 791-92 (1996).
ORDER
For the foregoing reasons, it is hereby ORDERED that the defendant Underwriters’ motion for summary judgment pursuant to Mass.R.Civ.P. 56 on the issue of liability is ALLOWED. It is further ORDERED that the plaintiff Allmerica’s cross motion for summary judgment is DENIED.

D.P. Jowers v. SMA Life Assurance Co., Civ. No. 92-1908-G (Ala.Super.Ct. filed Aug. 26, 1992).

A “vanishing premium” policy relies upon interest rates to generate income that will cover the policy premiums so that the policyholder is not required to pay any further premiums.

The motions for summary judgment before this court pertain to liability only. The issue of damages is not at issue and is, therefore, not decided by this decision.

The terms Claim, Wrongful Act, and Contract Agent are defined in the policy as follows.
“Wrongful Act” means any actual or alleged enor, misstatement misleading statement, act, omission, neglect or breach of duty.
“Claim” means
(1) a civil or criminal proceeding, or an administrative adjudicatory proceeding commenced by the filing of a notice of charges or a formal investigative order;
(2) an arbitration or mediation proceeding; or
(3)a written demand for monetary damages, against the Allmerica Financial Insureds, including any appeal therefrom.
“Contract Agent” means a duly licensed life or accident and health agent, general or managing agent, or duly licensed Registered Representative while under valid contract with the Allmerica Financial Insureds.

Before addressing the parties’ arguments, it is necessary to determine whether Allmerica has exhausted the limits of the primary policy with CNA. Allmerica points to Underwriters’ Answer and Counterclaim as demonstrating Underwriters’ challenge of whether Allmerica exhausted the limits of the CNA policy. Underwriters, however, has not disputed this issue in its memoranda for summary judgment or during its argument before this court. It, therefore, is conceded that Allmerica’s primary policy limits were exhausted.

AUmerica cites to a Delaware case as supporting its position on this issue. See Playtex FP, Inc. v. Columbia Casualty Co., 609 A.2d 1087, 1094 (Del.Super. 1991). That case is distinguishable from this one because the excess insurer in Playtex did not challenge whether the action fell within coverage but at what point the excess policy would be triggered. In this case, however, Underwriters disputes whether coverage even exists under the language of the policy.

Several cases have drawn the clear distinction between the operation of a judgment and a settlement or an arbitration. See e.g., Mongeon v. Arbella Mut Ins. Co., Civ. No. 02-0154B (Worcester Super.Ct. April 23, 2004) (17 Mass. L. Rptr. 631); Goodman v. Seaver, Civ. No. 99-2085 (Essex Super.Ct. Aug. 28, 2000) (12 Mass. L. Rptr. 145).

See Bussie et al v. Allmerica Financial Corp., No. 97-40204-NMG, at 7 (D.Mass. May 19, 1999) (mem.); Aframe Aff. para 18.

In furtherance of this point, Underwriters point to another policy that CNA issued (Policy Number 132040762) to Allmerica that appears to provide coverage for losses resulting from “a Wrongful Act attributed solely to an Insured/Agent and not due to any independent negligence or bad faith of Allmerica Financial Corporation.”

A proper judicial determination is necessary to bind a third party. David A. Hoffrnan & David E. Matz, Massachusetts Alternative Dispute Resolution §§4.16, 4.28 (1996) (discussing the lack of binding effect that arbitration has on third parties). Under this principle, any determinations made during the Individualized Relief Plan would have no precedential value against Underwriters’ position.

 Allmerica asserts that the policy is unambiguous in its favor, but it alternatively argues that the language would at most be ambiguous as to coverage, requiring a review of its negotiations and other extrinsic evidence.

The term “Allmerica Financial Insureds” is defined in the policy glossary as pertaining to the Allmerica corporation itself, any subsidiary, and any officers or directors.

In certifying the class and accepting the settlement, Judge Gorton did not rule on the merits or defenses of either party to the settlement. Allmerica submits an affidavit of Lisa Shunkwiler, a paralegal for Allmerica’s counsel, in support of its argument that it was the Allmerica’s agents and not Allmerica itself that made the misrepresentations. Affidavits must rest on personal knowledge, not conclusory statements or statements of belief. Key Capital Corp. v. M&S Liquidating Corp., 27 Mass.App.Ct. 721, 727-28 (1989); Mass.R.Civ.P. 56. On this basis, this court does not credit Shunkwiler’s analytical breakdown of whether individual class members were claiming misrepresentations by Allmerica or its sales agents because her analysis does not answer the ultimate question of whether Allmerica had authorized the representations at issue. In addition, the court is not bound by the determina *401 tions made during the Bussie Class Action, which involved alternative dispute resolution in the Individualized Relief Process. See Butler, 424 Mass. at 425; David A. Hoffman & David B. Matz, supra, §4.28. Underwriters was not a party to that prior action and as discussed supra is not precluded from challenging those issues.

Allmerica listed the Jowers action in its applications for coverage with CNA and Underwriters (Ex. 14 of Plaintiffs Memorandum), but Allmerica’s inclusion of a case name and brief description within its application does not effect the court’s analysis on these issues.

A self-insured retention is defined as the “amount of an otherwise-covered loss that is not covered by-an insurance policy and that [usually] must be paid before the insurer will pay benefits . ..” Black’s Law Dictionary 1391 (8th ed. 2004).

The relevant provision sets forth that “[a] Single Retention shall apply to any one Claim or more than one Claim involving the same Wrongful Act or Interrelated Wrongful Act (which shall be considered as one Claim).” If multiple retentions were applicable, the Underwriters’ excess policy would not be triggered because Allmerica’s obligation to pay a portion ($2.5 million) of each “claim” plus CNA’s payment would already cover the costs associated with the Bussie Class Action.

The second to last paragraph of this letter states:
While, at this time, Underwriters lack sufficient information to consent to the proposed settlement and/or advise you of Underwriters’ position regarding the scope of coverage for the settlement, given the fact that AUmerica is under court imposed time constraints to conclude the settlement agreement, and pursuant to the broker’s recent request, Underwriters agree that they will not assert that the failure to obtain Underwriters’ prior consent to the settlement constitutes a separate defense to coverage. As such, Underwriters fully reserve their rights to object to the reasonableness of the terms of the settlement and fully reserve their rights regarding coverage issues presented, including, but not limited to the allocation of settlement amounts, costs and defense expenses between covered and non-covered claims.