CHARLES F. STARK *vs.* PATALANO FORD SALES, INC., &
another.[1]

No. 89-P-103.   ·

Norfolk. March 13, 1990. - March 7, 1991.

Present: BROWN, PERRETTA, & FINE, JJ.

*Practice, Civil,* Amendment, Complaint. *Limitations, Statute of. Con-
sumer Protection Act,* Demand letter, Pleading, Damages, Attorney's
fees. *Evidence,* Opinion. *Uniform Commercial Code,* Warranty, Dam-
ages. *Damages,* Consumer protection case, Attorney's fees.

In an action commenced in 1980 by the purchaser of a new truck against a
truck dealer seeking damages under G. L. c. 93A, the Consumer Pro-
tection Act, in which the plaintiff was allowed, in 1984, to amend his
complaint to add the truck's manufacturer as a party and to allege
breach of warranty and c. 93A counts against both defendants, the
judge properly denied the manufacturer's motion to dismiss the breach
of warranty counts on the ground they were time-barred, where the
amended complaint alleged breaches of warranty arising out of pre-
cisely the same defects described in the original complaint; moreover,
where there was nothing which precluded application of relation-back
principles to the purchaser's motion to amend his original complaint by
adding a claim under c. 93A against the manufacturer, that claim
should not have been dismissed as time-barred. [197-199]
At the trial of an action arising out of the purchase of a truck, in which
the purchaser sustained his burden of proof as to the defendants' liabil-
ity on claims alleging breach of warranty with testimony from an ex-
pert in the automotive engineering field, the expert's testimony was
neither unsupported by the facts nor based upon speculation. [199-200]
In an action alleging breaches of express and implied warranties of
merchantability and fitness against both the manufacturer and seller of
a new truck, the jury's assessment of damages against the two defend-
ants in the sum of $38,300 was excessive and duplicative where, al-
though the plaintiff proved the loss of the use of the truck, he failed to
prove the amount of his damages from that loss. [200-203]
Although the purchaser of a new truck was entitled to recover certain
damages on his claim under G. L. c. 93A against the dealer from whom
he purchased the truck, the judge, in putting special questions to the
jury, was not bound by the jury's answer that the plaintiff's damages
should be trebled; in addition, further proceedings were required with

[1]Ford Motor Company.

regard to damages on the plaintiff's c. 93A claim against the truck's manufacturer which had been erroneously dismissed. [203-205]

In a civil action in which attorney's fees had been awarded in an amount far exceeding the plaintiff's over-all recovery (as corrected by this court), this court declined to award appellate counsel fees, and left it to the trial judge to reconsider the original award. [205-206]

CIVIL ACTION commenced in the Superior Court Department on June 2, 1980.

After transfer to the Wrentham Division of the District Court Department, the case was heard by *Robert J. Kane*, J., on a motion to dismiss. Thereafter, upon retransfer to the Superior Court Department, the case was tried before *Suzanne V. DelVecchio*, J.

*Brian A. Davis* for the defendants.

*Roger S. Davis* for the plaintiff.

PERRETTA, J. These cross appeals from judgments awarding over $38,000 in damages, and counsel fees in the amount of $25,746, to Charles F. Stark arise out of his purchase of a truck, costing $9,327, manufactured by Ford Motor Company (Ford) and sold to him by Patalano Ford Sales, Inc. (Patalano), in 1978. What began on June 2, 1980, as a claim against Patalano under G. L. c. 93A, § 9, was amended four years later into a complaint of eleven counts, alleging a breach of all warranties and unfair and deceptive acts by both the defendants. Before trial in the District Court, Ford moved to dismiss the complaint, claiming it was time-barred. The judge denied the motion and after trial reported to the Appellate Division the question whether the c. 93A claim against Ford was time-barred. The Appellate Division concluded that it was and ordered dismissal of that count against Ford. Hence, at trial on the retransfer to the Superior Court under G. L. c. 231, § 102C, Ford's liability under c. 93A was not at issue. On appeal, Ford argues that the complaint should have been dismissed in its entirety and joins with Patalano in challenging the evidentiary basis for the jury's determination as to liability and the amount of damages awarded. Stark claims that his c. 93A count against Ford should not have been dismissed and that the

award against Patalano under c. 93A should have been trebled. We conclude that the amendment adding Ford as a party related back to the original complaint and that a major component of the damages awarded to Stark is based upon speculation. We reverse the judgments.

## BACKGROUND

When Stark bought the truck from Patalano, he made it known that he was buying the 1978 Ford F250 "Camper Special" for his personal use, to transport a rear-mounted recreational "camper body" for camping trips. As early as the day after delivery, August 25, 1978, Stark began to experience a seemingly inexhaustible series of problems with the truck including, but not limited to: lack of engine power, poor braking, electric gauge malfunction, low gas mileage, premature and uneven tire wear, a malformed windshield, and peeling paint.

Stark repeatedly brought the truck to Patalano for service under the express warranty from Ford which covered repairs for twelve months or 12,000 miles. Between September 20, 1978, and January 30, 1980, Patalano wrote up about twenty-five warranty tickets which described some forty distinct complaints by Stark. Additionally, Stark, a mechanic by trade, performed repair work on the truck, such as oil changes, tune-ups, and parts replacement. In all, he spent about $2,329 in his attempts to make the truck operate satisfactorily.

On April 18, 1980, Stark wrote to Patalano and demanded, under G. L. c. 93A, § 9, that Patalano remove the truck from his property and return the purchase money to him. Patalano, already having inspected the truck twenty-five times, advised Stark that, because it could find no defect to remedy, he should take the truck to any authorized Ford dealer and have it inspected in the presence of a Ford Motor Company representative. Should any defects be discovered upon that inspection, Patalano would remedy them under its warranty, even though it had expired. Stark rejected the offer and commenced suit against Patalano.

## AMENDMENT OF THE COMPLAINT

On June 27, 1984, Stark was allowed to amend the complaint which had been drafted and filed on June 2, 1980, by his previous attorney. Ford was added as a party, and the c. 93A action became a somewhat sophisticated litany of contract, warranty, and consumer wrongs.[2] Ford moved to dismiss the complaint on the basis that Stark's action against it was barred by G. L. c. 106, § 2-725, and G. L. c. 260, § 5A.

There is no question that when Stark brought his action against Ford the statutes of limitation had expired. Whether he nonetheless could proceed against Ford turns on whether the action related back to the original complaint against Patalano. See Mass.R.Civ.P. 15(c), 365 Mass. 762 (1974).

We consider first the breach of warranty counts.[3] If G. L. c. 231, § 51, as amended by St. 1988, c. 141, § 1, is applicable to this action, the question is disposed of quickly.[4] Approved on July 14, 1988, chapter 141 was accompanied by an emergency preamble. Additionally, § 2 of that chapter

---

[2]Stark ultimately waived his claims of breach of contract, rescission, and revocation of acceptance.

[3]Stark contends that because the sole issue reported to the Appellate Division pertained only to whether the c. 93A count should have been dismissed, Ford cannot now argue that it was error to refuse to dismiss the warranty claims. The question whether the warranty claims are time-barred is one of law. See, e.g., *Joseph A. Fortin Constr., Inc.* v. *Massachusetts Hous. Fin. Agency*, 17 Mass. App. Ct. 911, 912 (1983). In the circumstances of this case, we think Stark's argument too sweeping and technical. Cf. *Methuen Constr. Co.* v. *J & A Builders, Inc.*, 4 Mass. App. Ct. 397, 400-401 & n.4 (1976). Ford has relied upon the statutes of limitation from the outset and could have thought reasonably, even if erroneously (a point we do not reach), that a report of the question in respect to one of the claims was, for all intents and purposes, a report as to both.

[4]As amended, § 51 reads: "In all civil proceedings, the court may at any time, allow amendments adding a party, discontinuing as to a party or changing the form of the action, and may allow any other amendment in matter of form or substance in any process, pleading or proceeding, which may enable the plaintiff to sustain the action for the cause or for recovery for the injury for which the action was intended to be brought, or enable the defendant to make a legal defense. Any amendment allowed pursuant to this section or pursuant to the Massachusetts Rules of Civil Procedure shall relate to the original pleading."

states that the "act shall apply to all actions pending as of its effective date . . . ." Although the trial had been completed and the posttrial motions decided prior to July 14, 1988, the rulings on the motions and the judgments were not entered on the docket until October 7, 1988. Up until that date, there was no final judgment, see Mass.R.Civ.P. 54(a) and (b), 365 Mass. 820-821 (1974), and the case was pending. See *Mulligan* v. *Hilton*, 305 Mass. 5, 8 (1940); *Wood* v. *Jaeger-Sykes, Inc.*, 27 Mass. App. Ct. 199, 200-201 (1989).

Even were the statute inapplicable, our conclusion would be no different under *Bengar* v. *Clark Equip. Co.*, 401 Mass. 554, 556-558 (1988). Although the original complaint against Patalano was ostensibly grounded upon a c. 93A violation, a closer look at that pleading shows allegations of breaches of warranties, both express and implied, as well as a thorough description of the truck's defects. The amended complaint, more organized and artful in form, alleges breaches of warranties arising out of precisely the same defects described in the original complaint. The motion to dismiss the warranty counts was properly denied.

In respect to the dismissal of the c. 93A claim against Ford, there is a twist in the analysis: the § 9 thirty-day demand letter which Stark sent to Ford on January 23, 1984. In dismissing this claim against Ford, the Appellate Division held that, no matter how liberal our amendment policy, there could not be a relation back to a date before which suit could have been commenced, here, sometime after mid-February, i.e., thirty days after the demand letter. That conclusion was based upon the reasoning that the demand letter was jurisdictional in nature (see *York* v. *Sullivan*, 369 Mass. 157, 163-164 [1975]; *Spring* v. *Geriatric Authy. of Holyoke*, 394 Mass. 274, 287 [1985]) and analogous to the claim presentment required under G. L. c. 258, § 4, the Massachusetts Tort Claims Act. See *Weaver* v. *Commonwealth*, 387 Mass. 43, 48-49 (1982).

We do not agree. There are distinct differences in the purpose of the presentment requirement and the demand letter. Claim presentment is mandated in order that the "highest

officer of an executive department is not only in a position to undertake the investigation which might be required to preclude payment of inflated or invalid claims, but also to make provision, during the budgetary process, for the payment of valid claims, and to institute promptly any corrective measures designed to reduce the number of valid claims in the future. By requiring presentment to that officer, the Legislature intended to make certain notice is given to the official best able to ensure that the interests of the Commonwealth would be protected." *Id.* at 48. The purpose of the demand letter, however, is to encourage negotiation and settlement and to control the amount of damages which the consumer might ultimately recover. See *Slaney* v. *Westwood Auto, Inc.*, 366 Mass. 688, 704 (1975); *York* v. *Sullivan*, 369 Mass. at 162; *Spring* v. *Geriatric Authy. of Holyoke*, 394 Mass. at 288.

Ford resisted amendment of the complaint on the sole basis that it was time-barred, the very reason which triggers rule 15(c). *Bengar* v. *Clark Equip. Co.*, 401 Mass. at 556. Ford was served with the amended complaint some five months after the demand letter and, hence, had ample opportunity to investigate and respond to Stark's claim. Compare *BBF, Inc.* v. *Germanium Power Devices Corp.*, 13 Mass. App. Ct. 166, 178 (1982).

We see nothing in the legislative objectives of the § 9 demand letter or the circumstances of the instant case which precludes application of relation back principles to Stark's motion to amend his original complaint by adding a claim under c. 93A against Ford. The claim should not have been dismissed.

### LIABILITY ON THE WARRANTY CLAIMS

Stark sustained his burden of proof as to liability in large measure with testimony from a witness possessing expertise in the automotive engineering field. Ford and Patalano do not challenge Daniel Harwood's qualifications to testify as an expert. Rather, they contend that his testimony was unsupported by the facts and based upon speculation.

Harwood's opinions were based upon his personal examination of the truck and Stark's testimony. He attributed the blistering and peeling paint to improper treatment during the manufacturing process of the truck. Harwood personally observed the rear wheel "lock-up," which he stated was due to factory installation of a faulty proportioning valve. The "smearing" problem with the windshield was the result of either a malformed contour of the glass itself or an insufficient spring strength in the wiper blades. As for the many electrical malfunctions, they were due to the factory-installed harness. Although Harwood could not isolate the cause for the truck's poor engine performance, he was able to state that, based upon the truck's mechanical history, the problem likely predated the truck's delivery.

These assertions were not founded upon speculation, see *Reed* v. *Canada Dry Corp.*, 5 Mass. App. Ct. 164, 166 (1977), but were based upon the knowledge which Harwood gleaned from his personal observation of the truck and its mechanical history as related to him by Stark. See *Melvin* v. *H. J. Nassar Motor Co.*, 355 Mass. 692, 693 (1969).

Any weaknesses in Harwood's testimony (he conducted his examination of the truck six years after its delivery and relied upon Stark's version of its performance) did not reduce it to speculation and conjecture. The infirmities, if any, in Harwood's testimony went not to its admissibility but to its weight, which was fairly tested by cross-examination. See *LeBlanc* v. *Ford Motor Co.*, 346 Mass. 225, 232 (1963); *Carey* v. *General Motors Corp.*, 377 Mass. 736, 742 (1979); *Doherty* v. *Belmont*, 396 Mass. 271, 276 (1985).

### DAMAGES ON THE WARRANTY CLAIMS

Ford and Patalano were each found liable on separate judgments based upon identical claims of breach of express and implied warranties of merchantability and fitness. The jury assessed damages against Ford in the amount of $24,400, and $13,900 against Patalano for a total recovery on these counts of $38,300. Not surprisingly, Ford and Patalano attack the damages as excessive and duplicative.

In instructing the jury on damages for breach of warranty, the judge essentially tracked G. L. c. 106, § 2-714(2), as inserted by St. 1957, c. 765, § 1. That statute provides: "The measure of damages for breach of warranty is the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted, unless special circumstances show proximate damages of a different amount." See also *Melvin v. H. J. Nassar Motor Co.*, 355 Mass. at 694. Although the easiest way to measure the "difference" is by the cost of the repairs, that method does not work where the repairs have been unsuccessful. See White & Summers, Uniform Commercial Code § 10-2 (2d ed. 1980).

There was evidence to show that, at the time of trial, the truck was just as nonconforming as on the date of delivery. Further, Stark testified that the truck was worthless because he could not use it for its intended purpose. Although we think it likely that the truck had some value to Stark over the years, see, e.g., *Sharton v. J. H. Westerbeke Corp.*, 11 Mass. App. Ct. 925, 926 (1981), evidence of any value (other than zero) was never offered to the jury. Consequently, in terms of assisting the jury in determining the value difference "in what . . . [Stark] received and what he expected to receive," *Melvin v. H. J. Nassar Motor Co.*, 355 Mass. at 694, only two figures come to mind: the purchase price, $9,327, less the value testified to by Stark, zero. We add to the difference between these two figures Stark's out-of-pocket expenditures, $2,329, in attempting to repair the vehicle, and arrive at $11,656.

There remains over $26,000 to be explained. Stark attributes the amount to his consequential damages, suffered as a result of his loss of use of the truck. See G. L. c. 106, § 2-714(3), and § 2-715(2)(a). See also *Delano Growers' Coop. Winery v. Supreme Wine Co.*, 393 Mass. 666, 679-680 (1985). See generally White & Summers, Uniform Commer-

cial Code § 10-3 and § 10-4. Ford and Patalano respond with three arguments, one of which has merit.[5]

Although we recognize that loss-of-use damages are not susceptible of exact pecuniary computation, there must be some evidence to provide a reasonable basis by which the jury may measure the loss. "When . . . damages are sought they must be proved and not left, as here, to speculation. 'This is simply a concrete application of the wider principle . . . that the complaining party must establish his claim upon a solid foundation in fact, and cannot recover when any essential element is left to conjecture, surmise or hypothesis.' " *Snelling & Snelling of Mass., Inc.* v. *Wall,* 345 Mass. 634, 636 (1963), quoting from *John Hetherington & Sons, Ltd.* v. *William Firth Co.,* 210 Mass. 8, 22 (1911). Turning to the evidence, all that we see offered by Stark is his testimony that he had driven 153,000 miles in five years with his previous truck and that he had used it during that period for about forty to forty-five camping weekends a year. By contrast, he had driven the "Camper Special" in dispute 33,636 miles in seven and one-half years and had been on camping trips with it only three or four weekends. But, even though Stark described the nature of his loss, he gave the jury no guidance in terms of the dollar amount of that loss.

On appeal, Stark argues that $26,000 for his loss of the use of the truck for camping is not unreasonable, if the award is approached in the following manner. Assuming that Stark would have continued camping at the rate of forty to

---

[5]Ford first relies upon G. L. c. 106, § 2-316A, as inserted by St. 1970, c. 880, to argue that, under the second paragraph of the statute, it modified its express warranties to disclaim liability for damages for loss of use. The argument overlooks the first paragraph, which essentially provides that any attempt by a manufacturer of consumer goods to limit a buyer's remedies for breach of implied warranties of merchantability and fitness for a particular purpose "shall be unenforceable."

Second, the defendants cite to *Burnham* v. *Mark IV Homes, Inc.,* 387 Mass. 575, 586 (1982) ("a plaintiff may not recover for damages that were avoidable by the use of reasonable precautions on his part"), and argue that Stark's failure to seek "alternative transportation" for his camping trips precludes him from recovering consequential damages. We think that discussion of this contention is unnecessary.

forty-five times a year, and assuming that he would have used the truck for each of those trips (200 to 225 during a five-year period), then each trip is reasonably valued at about $133. Stark's argument proves the defendants' point that the award for consequential damages is based upon speculation and conjecture.[6]

There is no question that Stark proved the loss of the use of the truck. It was, however, his burden also to prove the amount of his damages from that loss. Although a remand of the case is required because of the erroneous dismissal of the c. 93A claim against Ford, we do not enlarge the remand to include the opportunity for Stark to submit evidence as to the dollar value of his loss of use. The fact that Stark failed in his burden of proof the first time is insufficient basis upon which to provide him with a second chance. See and compare *Melvin* v. *H. J. Nassar Motor Co.*, 355 Mass. at 694, with *Anzalone* v. *Strand*, 14 Mass. App. Ct. 45, 50 (1982).[7]

## CHAPTER 93A DAMAGES

It follows from what we have said that Stark is entitled to recover the damages that he proved, $11,656, and that he is entitled to have that amount entered on a judgment under c. 93A against Patalano. See *Calimlim* v. *Foreign Car Center, Inc.*, 392 Mass. 228, 235-236 (1984), discussing preference for one award under c. 93A where same conduct

---

[6]If the $38,300 award is in any way based upon the possibility that the jury believed that each defendant was responsible to pay Stark his total damages, that belief is unsupported by the pleadings (identical allegations of the same wrong), the amount of the judgments (different as to each defendant), and the law. Cf. *Tritsch* v. *Boston Edison Co.*, 363 Mass. 179, 182-183 (1973); *Laurendeau* v. *Kewaunee Scientific Equip. Corp.*, 17 Mass. App. Ct. 113, 120-121 (1983); *American Mechanical Corp.* v. *Union Mach. Co. of Lynn*, 21 Mass. App. Ct. 97, 101 (1985); Restatement (Second) of Torts § 875, and compare § 881 (1977).

[7]Further, in view of the facts, that the truck had some value to Stark who drove it over 33,000 miles, that he is entitled to over $11,000 in actual damages, and that he will receive interest on that award, we see no need to consider a nominal award for his loss of use of the truck. Compare *White Spot Constr. Corp.* v. *Jet Spray Cooler, Inc.*, 344 Mass. 632, 635-636 (1962). See Restatement (Second) of Contracts § 346 and comment b (1979).

gives rise to multiple theories of recovery. The questions that now arise are whether that award should be doubled or trebled and, if so, as to which, or both, defendants. See *International Fid. Ins. Co.* v. *Wilson*, 387 Mass. 841, 855-858 (1983), explaining the justification for the principle that "concurrent wrongdoers are independently liable under statutes designed to impose a penalty." *Id.* at 855.

Stark claims that, by reason of the jury's responses to special questions, he is entitled to treble damages from Patalano. The jury answered that Patalano's actions constituted an unfair act causing damages in the amount of one dollar, which should be trebled.[8] His argument is that, because he is entitled to have his recovery awarded on the c. 93A claim and because the jury specially answered that his damages should be trebled, he is entitled to recover $41,700, from Patalano.

The argument, however, does not take into account the fact that the judge had the option of "taking the jury's finding on an advisory basis." *Acushnet Fed. Credit Union* v. *Roderick*, 26 Mass. App. Ct. 604, 606 (1988), and cases therein cited. There is nothing in the record to show that the judge, in putting special questions to the jury, first elected to be bound by their answers. Indeed, the judgment indicates to the contrary. There the judge wrote that she "adopts the findings of the jury as follows . . . . However, the Court will not treble the aforementioned damage award."[9]

---

[8]The jury's response that Patalano's acts were unfair is consistent with their verdict on the breach of warranty counts and the judge's instructions that a breach of warranty "constitutes an unfair and deceptive practice." See *Calimlim* v. *Foreign Car Center, Inc.*, 392 Mass. at 235, citing 940 Code Mass. Regs. 3.16(3) (1978).

[9]Although the judge did not make findings of fact in refusing to treble Stark's recovery against Patalano, we see no need for the "expenditure of judicial resources," *Acushnet Fed. Credit Union* v. *Roderick*, 26 Mass. App. Ct. at 608, by requiring written confirmation of the obvious. Compare *Bruno* v. *Bruno*, 384 Mass. 31, 35-37 (1981). It is implicit in the judge's refusal that she found and concluded that Patalano's violation of c. 93A, § 2, was not knowing and wilful and that its response to Stark's demand letter was not made in bad faith. There is support in the record for either of these implicit findings. See *International Fid. Ins. Co.* v. *Wilson*, 387 Mass. at 853, citing *Linthicum* v. *Archambault*, 379 Mass. 381,

As to Ford, we reach a different conclusion which requires a remand for further proceedings in respect to Stark's c. 93A claim that was erroneously dismissed. Those proceedings do not, however, include by necessity a trial. Although we think that Ford's liability under c. 93A is a foregone conclusion (in view of the jury's verdict on the warranty claims, the judge's jury instructions on c. 93A as to Patalano, her acceptance of the jury's response on the question of Patalano's c. 93A liability, and the fact that Ford is not entitled as matter of right to a jury trial on the claim, see *Travis v. McDonald*, 397 Mass. 230, 233-234 [1986]), we also think that the question is more appropriately left to the judge.

There also remains open the question of whether double or treble damages should be assessed against Ford. In view of the facts that Ford manufactured the truck and responded to Stark's demand letter by informing him that he would "again be contacted" after an investigation of his complaint by a service representative, any findings by the judge on this issue should be expressed. Compare note 8, *supra*.

To summarize. As to Patalano, the matter has come to an end. However, there must be further proceedings in the Superior Court on the c. 93A claim against Ford.[10] Ford and Stark have the right to present any additional evidence necessary to a determination of that claim which has yet to be considered.

## APPELLATE COUNSEL FEES

In view of the facts that Stark has been awarded $25,746 in counsel fees on a recovery, as corrected, in the amount of $11,656 and that his recovery is susceptible to increase after the proceedings on remand, we decline to award appellate counsel fees. Moreover, in view of the facts that both defendants are represented by the same attorney and that Ford's

---

388 (1979). Compare *Patry* v. *Liberty Mobilhome Sales, Inc.*, 15 Mass. App. Ct. 701, 705-706 (1983); *Montanez* v. *Bagg*, 24 Mass. App. Ct. 954, 956 (1987).

[10]If possible, these proceedings should be conducted by the judge who presided at the original trial.

liability under c. 93A was not before the judge when she assessed counsel fees against Patalano, we leave it open to the judge to reconsider the award. See *Bertassi* v. *Allstate Ins. Co.*, 402 Mass. 366, 373 (1988) ("one of the factors to be considered in an award of attorney's fees is the amount of the over-all recovery").

## CONCLUSION

The judgments are vacated and the matter is remanded to the Superior Court for further proceedings and entry of judgments consistent with this opinion.

*So ordered.*