Agnes, Peter W., J.
Allmerica Financial Corporation and its affiliates (collectively, Allmerica) filed this action for a declaratory judgment that the defendants, Certain Underwriters at Lloyd’s London (the Underwriters), are obligated to indemnify Allmerica under the terms of an excess insurance policy for the settlement of a class action lawsuit. In 2004, this court granted summary judgment for the Underwriters on the basis of an exclusion in the policy [18 Mass. L. Rptr. 333). The Supreme Judicial Court reversed and remanded the matter for further proceedings. See Allmerica Fin. Corp. v. Certain Underwriters at Lloyd’s London, 449 Mass. 621 (2007). After two additional years of discovery, the matter is again before this court on the Underwriters’ motion for summary judgment.[3] For the reasons discussed below, the Underwriters’ motion will be ALLOWED.
BACKGROUND
The summary judgment record discloses the following undisputed material facts. Reference may also be made to the SJC’s decision, Allmerica Fin. Corp., 449 Mass. at 622-27, for a more detailed overview of the underlying facts.
Allmerica is a Massachusetts corporation engaged in the business of selling life insurance policies. In 1996, Allmerica obtained an insurance policy from Columbia Casualty Insurance Company (CNA) for $20 million in professional services liability coverage, payable after a self-insured retention amount of $2.5 million. The policy was effective for the period of July 1, 1997 to July 1, 1998. Allmerica also obtained an excess “follow form” policy from the Underwriters for $ 10 million in liability coverage during the same policy period.[4] Under the excess policy (hereinafter referred to as the policy), the Underwriters’ obligation to pay a covered loss would attach only after Allmerica had paid its $2.5 million retention amount and CNA had paid its $20 million policy limit.
On October 17, 1997, a group of individuals filed a class action against Allmerica in the United States District Court for the District of Massachusetts (the Bussie class action), alleging that Allmerica, directly and through its agents, engaged in improper practices in the sale and marketing of its life insurance policies.[5] The parties eventually reached a settlement (the Bussie settlement), and by memorandum and order dated May 19, 1999, Judge Gorton of the Federal District Court certified a settlement class, approved the settlement, and dismissed the Bussie class action.
Under the terms of the settlement agreement, the approximately 430,000 class members had the option of General Policy Relief or Individualized Relief through an alternative dispute resolution (ADR) process. General Policy Relief provided class members the right to buy life insurance policies and annuities at a substantial discount. Those members opting for relief through the ADR process were required to submit formal claims with supporting documentation to be evaluated by a claim adjudicator. The ADR process also required Allmerica to present certain materials relating to the merits of each claim. Upon reviewing these materials, the adjudicator assigned a score to each claim in accordance with scoring criteria set forth in the settlement agreement.[6]
Of the 12,957 class members electing for relief through the ADR process, only 5,061 submitted complete and timely claims which the adjudicators actually evaluated and scored. In 1,856 of the claims, the adjudicators issued a score of “0.” This meant that the adjudicator concluded, based upon the materials submitted by the claimant and Allmerica, that it appeared more likely than not that a misrepresentation did not occur. No relief of any kind was extended to claimants with a score of “0.” Another 1,827 of the claims received a score of “1,” meaning that it appeared as likely as not that a misrepresentation occurred. Al-lmerica offered these claimants General Policy Relief, but no monetary awards.
In total, Allmerica incurred approximately $39.4 million in costs arising from settlement payments, attorneys fees, administrative costs and implementation of the ADR process. Approximately $3.9 million of the total amount was paid towards monetary awards resulting from the ADR process. CNA, Allmerica’s primary insurer, agreed to pay the full amount of its *306 policy limit ($20 million), indicating that it interpreted the Bussie settlement as a covered loss under the policy.
The Underwriters, however, had a different interpretation of the Bussie settlement. In a letter dated January 20, 2000, the Underwriters denied coverage for all loss, citing, without limitation, exclusions Ill.b (prior claims exclusion) and Ill.g (future performance exclusion) of the policy. The language contained in these two provisions reads as follows:
III. [T]he Insurer shall not be liable to pay any Loss under this Insuring Agreement in connection with any Claim made against the Allmerica Financial Insureds[7]. . .
b. based upon, directly or indirectly arising out of, or in any way involving:
(1) any Wrongful Act[8] or any matter, fact, circumstance, situation, transaction or event which has been the subject of any Claim made against the Allmerica Financial Insureds prior to [August 29, 1996); or
(2) any other Wrongful Act whenever occurring, which, together with a Wrongful Act which has been the subject of such Claim, would constitute Interrelated Wrongful Acts[9] . . .
g. based upon, directly or indirectly arising out of or in any way involving any of the Allmerica Financial Insureds’ actual or alleged oral or written representation, promise or guarantee of the past performance or future value of any insurance product or investment product, provided this Exclusion shall not apply to any Claim arising out of a representation, promise or guarantee of a Contract Agent acting independent of the Allmerica Financial Insureds; including representations not authorized by the Allmerica Financial Insureds and made by the Contract Agent in conjunction with the Al-lmerica Financial Insured’s authorized marketing materials . . .
On September 30, 2002, Allmerica instituted this action for breach of the insurance contract, seeking a declaration of coverage for the full costs of the Bussie settlement. In their answer, the Underwriters raised affirmative defenses and counterclaimed for a declaration of noncoverage.
In its present summaiy judgment motion, the Underwriters argue, as they did in their 2004 summaiy judgment filing, that the future performance exclusion (Ill.g) precludes all coverage for the Bussie settlement. [10] The Underwriters have also filed for summaiy judgment in the alternative, asserting a new theory based on Allmerica’s failure to allocate its losses from the Bussie settlement. Specifically, the Underwriters contend that Allmerica has proffered no reasonable allocation methodology from which it could be determined that the covered losses from the Bussie settlement exceed the Underwriters’ $22.5 million attachment point. The Underwriters also argue, as they did in 2004, that coverage for the Bussie settlement is barred under the prior claims exclusion (Ill.b).[11]
DISCUSSION
1. Standard of review
Summaiy judgment is granted where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Mass.R.Civ.P. 56(c); Cassesso v. Commissioner of Com. 390 Mass. 419, 422 (1983). When reviewing a motion for summary judgment, the court considers the evidence presented in the light most favorable to the non-moving party. Flynn v. City of Boston, 59 Mass.App.Ct. 490, 491 (2003). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue. Pederson v. Time, Inc., 404 Mass. 14, 17 (1989). The moving party may satisfy its burden either by submitting affirmative evidence negating an essential element of the opposing party’s case or by demonstrating that the opposing party has no reasonable expectation of proving an essential element of its case at trial. Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991). Where the moving party meets this burden, the opposing party must respond and set forth specific facts showing the existence of a genuine issue for trial. Id.
2. Coverage under the policy
In an action for insurance coverage, the insured bears the initial burden of “proving that the loss is within the description of the risks covered.” Highlands Ins. Co. v. Aerovox, Inc., 424 Mass. 226, 230 (1997). The duty to indemnify, unlike the duty to defend, is “determined by the facts, which are usually established at trial.” Travelers Ins. Co. v. Waltham Indus. Labs. Corp., 883 F.2d 1092, 1099 (1st Cir. 1989), citing Newell-Blais Post No. 443 v. Shelby Mut. Ins., 396 Mass. 633, 487 N.E.2d 1371, 1374 (1986). Here, as in Travelers Ins. Co., the underlying action was settled prior to trial. “This means that the duty to indemnify must be determined in the basis of the settlement and, since this [i]s a summary judgment proceeding, the undisputed facts.” Id. See also Polaroid Corp. v. Travelers Indem Co., 414 Mass. 747, 765 (1993) (insured’s settlement of underlying claim will not conclusively resolve insurer’s obligation to indemnify).
In this case, the policy provides the following coverage:
If during the Policy Period . . . any Claim is first reported by the Allmerica Financial Insureds for a Wrongful Act by the Allmerica Financial Insureds or by a person or entity for whom the Allmerica Financial Insureds are legally responsible in the rendering of or failure to render Professional Services, then the Insurer shall reimburse the Al-lmerica Financial Insureds for Loss[12] resulting from such Claim . . .
*307 Under the policy, a wrongful act means “any actual or alleged” misstatement or misleading statement. Allmerica argues that coverage exists for all claims in the Bussie class action because each alleges that misrepresentations were made. Allmerica, however, disregards the undisputed results of the ADR process. In the ADR proceedings, the adjudicators scored 3,683 of 5,061 claims as either a “0" or a ” 1." In other words, the adjudicators found that seventy-three percent of the claims were without merit because either the claims involved no misrepresentation or there was insufficient evidence to show that a misrepresentation had actually occurred.
Allmerica’s position that meritless claims are nonetheless covered under the definition of a “wrongful act” is not only an unreasonable interpretation of the policy, but is also at odds with the concept of indemnification, the purpose of which is to protect against liability. See Cody v. Connecticut Gen. Life Ins. Co., 387 Mass. 142, 146 (1982) (insurance contracts are to be construed “according to the fair and reasonable meaning of the words in which the agreement of the parties is expressed”); Boston Symphony Orchestra v. Commercial Union Ins. Co., 406 Mass. 7, 10 (1989) (duty to indemnify arises upon finding of insured’s liability). The policy here expressly embodies this notion in the definition of loss where it states that loss shall not include “any amounts for which there is no legal recourse against” Allmerica. Therefore, at a minimum, the results of the ADR scores establish that the Bussie settlement consists of costs resulting from both covered and uncovered claims.
3. Allocation
As the summary judgment record establishes that the settlement consists of covered and uncovered loss, there must be an allocation as to the covered portion of the losses from the Bussie settlement. See Continental Cas. Co. v. Canadian Universal Ins. Co., 924 F.2d 370, 376 (1st Cir. 1991) (obligation to allocate arises once it has been established that a portion of the settlement is covered and a portion is not); Liquor Liab. Joint Underwriting Ass’n of Mass. v. Hermitage Ins. Co., 419 Mass. 316, 324 (1995). Where, as here, the insured has settled the underlying case, it bears the burden to allocate its losses in the coverage action. Continental Cas. Co., 924 F.2d at 378-79; Safeguard Scientifics, Inc. v. Liberty Mut Ins. Co., 766 F.Sup. 324, 334-35 (E.D.Pa. 1991), aff'd in part, rev’d in part, 961 F.2d 209 (3d. Cir. 1992). See Perdue Farms, Inc. v. Travellers Cas., 448 F.3d 252, 263 (4th Cir. 2006) (“[T]he burden is on the insured to prove the amounts attributable to covered claims”; court observes that “the apportionment of settlement amounts between covered and non-covered claims is typically resolved through negotiation and private agreement”). Further, because this dispute concerns an excess policy covering only losses exceeding the amount of Allmerica’s primary coverage, Allmerica must show that the amount of its covered loss exceeds the Underwriters’ $22.5 million attachment point.
In its brief, Allmerica contends that the allocation of loss between covered and uncovered claims presents a question of fact for the jury. Allmerica suggested at oral argument that a jury can determine the amount of its covered loss based upon what would be reasonable under the circumstances.
This proposed methodology is insufficient to raise a genuine issue for trial. Here, where Allmerica has incurred almost $40 million in losses resulting from the Bussie settlement, there must be some evidentiary basis from which ajuiy can allocate the covered losses with some certainty. See Don v. Soo Hoo, 75 Mass.App.Ct. 80, 85 (2009), and cases cited (“The essential requirement is that a plaintiff have some basis for permitting the jury to make a reasoned judgment that the plaintiff is likely to incur damages in a specified amount”). Allmerica, however, has offered absolutely no evidence or allocation methodology to show that its covered losses exceed the Underwriters’ attachment point. On the summary judgment record, Allmerica has not carried its burden to allocate its losses “and any attempt on its part to do so would be speculative and arbitrary,” Liquor Liab. Underwriting Ass’n of Mass., 419 Mass. at 324. See also Safeguard Scientifics Inc., 766 F.Sup. at 334-35. The Underwriters are thus entitled to summary judgment, as they have demonstrated to this court that Allmerica has no reasonable expectation of proving an essential element of its case at trial.[13]
ORDER
For the foregoing reasons, it is hereby ORDERED that the defendants’ alternative motion for summary judgment is ALLOWED.

 The Underwriters have filed two summary judgment motions. Their primary motion is grounded in the application of exclusion IILg to the insurance policy as a total bar to coverage. Their second motion is for summary judgment in the alternative based on Allmerica’s failure to allocate its losses from the underlying class action claim, as well as the application of exclusion Ill.b.

 A follow form policy is an insurance policy that incorporates the terms and conditions set forth in the primary policy.

 The allegations in the Bussie class action were substantially the same as those in an action that Victor Bussie filed against Allmerica on July 31, 1997, in the District Court for Jefferson Parish, Louisiana, which was voluntarily dismissed.

 Each claim was scored from “0" to ”4" using the following guidelines:
A score of 0 means on balance, based upon the Evidence in the Claim Review File, it appears more likely than not that a Misrepresentation did not occur.
*308 A score of 1 means on balance, based upon the Evidence In the Claim Review File, It appears as likely as not that a Misrepresentation occurred, and the Producer does not have a Complaint History.
A score of 2 means (i) on balance, based upon the Evidence in the Claim Review File which does not include Written Corroboration, it appears more likely than not that a Misrepresentation occurred, or (ii) it appears as likely as not that a Misrepresentation occurred, and the Producer has a Complaint History.
A score of 3 means (i) on balance, based upon the Evidence in the Claim Review File which includes Written Corroboration, it appears more likely than not that a Misrepresentation occurred, or (ii) on balance, based upon the Evidence in the Claim Review File, it is clearly demonstrated that a Misrepresentation occurred; provided, however, that if the Claim Review File contains an unedited, complete, Company-sponsored illustration and there is Evidence it was presented to the Claimant prior to the Delivery Date, that illustration weighs against finding that a Misrepresentation is clearly demonstrated.
A score of 4 means the Misrepresentation is in writing or the Relevant Producer was terminated as a result of the Misrepresentation made to the Claimant.

 Under the policy, Allmerica Financial Insureds means “Allmerica Financial, any Subsidiary, the Directors and Officers, the Insured Individual and any Plan to the extent those persons are afforded coverage by the Liability Insuring Agreements.”

 A Wrongful Act means any actual or alleged error, misstatement, misleading statement, act, omission, neglect or breach of duly.

 Interrelated Wrongful Acts means any Wrongful Acts which are logically or causally connected by reason of any common fact, circumstance, situation, transaction or event.

 In 2004, this court determined that the Bussie settlement would fall within the exclusion, unless Allmerica could demonstrate the applicability of the exception to the exclusion for representations of agents acting independent of Allmerica. This court also concluded, and the SJC concurred on appeal, that “whether these representations by Allmerica’s sales agents were authorized by Allmerica is a material question of fact that remains unanswered.” The Underwriters contend that the record as supplemented over the past two years now provides an answer to that question.

 This court awarded summary judgment for the Underwriters under the prior claims exclusion, and its common-law corollary, the known loss doctrine, when the Underwriters raised the issues in their first summary judgment filing. The SJC reversed.

 “Loss” means damages, settlements, judgments and Defense Costs for which the Allmerica Financial Insureds are legally obligated to pay. Loss shall not include: (1) criminal or civil fines or penalties imposed by law; (2) taxes; (3) any amounts for which there is no legal recourse against the Allmerica Financial Insureds; or (4) matters which are unin-surable under the law pursuant to which this Policy shall be construed.

 As this dispute can be resolved on the basis of allocation alone, the court need not resolve the applicability of the future performance or prior loss exclusions.